COMMONWEALTH of Pennsylvania,
Appellee,

v.

Clair E. SEIBERT, Jr., Appellant.

Superior Court of Pennsylvania.

Argued Oct. 30, 2001.
Filed Jan. 24, 2002.
Reargument Denied April 2, 2002.

**58**

Michael D. Dautrich, Reading, for appellant.

Patrick T. Barry, Asst. Dist. Atty., Reading, for Com., appellee.

Before STEVENS, LALLY–GREEN, and BROSKY, JJ.

STEVENS, J.

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Berks County following Appellant's convictions for involuntary manslaughter, homicide by vehicle while driving under the influence, and two counts of driving while under the influence (DUI).[1] On appeal, Appellant raises seven allegations of error.[2] We affirm.

¶ 2 Appellant contends that the evidence was insufficient to support his convictions by the jury.[3] "The law is settled in this Commonwealth that in reviewing the sufficiency of the evidence, the appellate court is required to review all the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, ... [as verdict winner]." *Commonwealth v. Earnest,* 386 Pa.Super. 461, 563 A.2d 158, 159 (1989) (citation omitted). "The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt." *Commonwealth v. Taylor,* 324 Pa.Super. 420, 471 A.2d 1228, 1229 (1984) (citation omitted). Moreover, "it is clear that a jury may believe all or only a part of a witness' testimony, and so long as the verdict is supported by the evidence there is no basis for interference with the fact-finding function of the jury." *Commonwealth v. Simpson,* 316 Pa.Super. 115, 462 A.2d 821, 824 (1983) (citation omitted).

¶ 3 The facts and procedural history are as follows: On February 13, 1999, at approximately 12:50 a.m., Appellant was operating a Jeep Grand Cherokee northbound on Route 183 when he went into the southbound lane and struck a tractor-trailer head on. The tractor-trailer was stopped at a stop sign at the intersection of Route 183 and New Schaefferstown Road and was forty-five feet long with reflective strips along the bottom of the frame. The driver of the tractor-trailer dialed 911, and the police responded.

---

1. As will be discussed *infra,* Appellant was also convicted of numerous summary offenses.

2. We have renumbered Appellant's issues for the sake of effective appellate review.

3. "Because a determination that the evidence was insufficient to support a conviction results in discharge, we shall begin by addressing th[e] [sufficiency of the evidence] claim." *Commonwealth v. Petroll,* 696 A.2d 817, 823 (Pa.Super.1997) (citation omitted).

¶ 4 When the police and emergency personnel arrived at the scene, they discovered that the passenger in Appellant's vehicle, Thomas Wise, was deceased as a result of the accident and that Appellant sustained several injuries. Emergency personnel placed Appellant in an ambulance, and Pennsylvania State Trooper Cory James Remp asked Appellant about the accident. During this time, Trooper Remp noticed that Appellant's eyes were glassy and bloodshot, Appellant's breath smelled of alcohol, and his speech was slurred. N.T. 8/4/99 at 25–26; N.T. 12/15/99 at 207–208.

¶ 5 Trooper Remp investigated the road and discovered that Appellant's vehicle left no skid marks. He noted that the weather was clear and that the road was dry. N.T. 8/4/99 at 22. Believing that Appellant was driving while under the influence of alcohol, Trooper Remp asked his partner, Trooper James Marasco, to telephone the State Police in Reading so that a blood alcohol test would be performed on Appellant. Trooper Marasco did as he was asked. N.T. 8/4/99 at 43–44.

¶ 6 Appellant was eventually transported via helicopter to the Lehigh Valley Medical Hospital, and, at approximately 2:18 a.m, Craig A. Hanzl, an emergency room technician, drew samples of Appellant's blood. N.T. 8/4/99 at 67–71. At approximately 2:30 a.m., Pennsylvania State Trooper Christopher T. Lengle asked the emergency room nurse to draw blood from Appellant for a blood alcohol test. The nurse informed Trooper Lengle that a sample had been taken twelve minutes before the trooper had arrived, and that the trooper would not be permitted to speak to Appellant until the doctors felt it was appropriate. N.T. 8/4/99 at 48. Trooper Lengle did not specifically request that another

sample of blood be taken for chemical testing pursuant to 75 Pa.C.S.A. § 3755.

¶ 7 At approximately 4:20 a.m., Trooper Lengle spoke with Appellant in the emergency room. Appellant told Trooper Lengle that he believed he slid on a wet road, but that he had about three beers that evening. N.T. 8/4/99 at 55–56. Trooper Lengle told Appellant that he was going to obtain the results of a blood alcohol test, to which Appellant agreed. N.T. 8/4/99 at 54. Trooper Lengle then directed a nurse to fill out a form, which Trooper Lengle signed, requesting that Appellant's blood be tested to determine a blood alcohol content and to obtain a copy of the test results. N.T. 8/4/99 at 60–61.

¶ 8 Appellant's blood test revealed that his blood alcohol content was .17%, Appellant was arrested, and Appellant was charged with numerous crimes. On July 1, 1999, Appellant filed a motion seeking to suppress the statements he made to Troopers Remp and Lengle and the results of his blood alcohol test. On August 4, 1999, a suppression hearing was held, and, on September 14, 1999, the trial court denied Appellant's motion to suppress.[4]

¶ 9 On November 24, 1999, Appellant filed a motion seeking to exclude several photographs taken at the scene of the accident and his blood alcohol test results, on the basis that the Commonwealth could not relate back Appellant's blood alcohol content to the time of the accident. The trial court denied the motion. N.T. 12/14/99 at 227.

¶ 10 Appellant proceeded to a jury trial on December 14, 1999, and, on that same date, the Commonwealth filed a motion seeking to exclude evidence of prior accidents which occurred at the intersection at issue. The trial court denied the motion. *See* N.T. 12/15/99 at 212. Following the

---

4. Appellant also asked that the trial court

order discovery, which the trial court granted.

trial, the jury convicted Appellant of homicide by vehicle while under the influence of alcohol, involuntary manslaughter, and two counts of driving while under the influence of alcohol. The trial judge found Appellant guilty of reckless driving, careless driving, driving on the right side of the highway, driving on roadways laned for traffic, and driving a vehicle at an unsafe speed.

¶ 11 On January 24, 2000, Appellant was sentenced to an aggregate of three years to seven years incarceration, and, on February 7, 2000, Appellant filed a post-sentence motion alleging, *inter alia,* that the verdict was against the weight of the evidence. The trial court denied the post-sentence motion, and, on March 1, 2000, Appellant filed a notice of appeal. The trial court ordered Appellant to file a statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), such a statement was filed, and the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

¶ 12 Appellant contends that (1) the evidence failed to show that Appellant acted in a reckless or grossly negligent manner as is required for involuntary manslaughter, (2) the evidence failed to prove that Mr. Wise's death was caused by Appellant drinking while under the influence of alcohol as is required for homicide by vehicle while driving under the influence of alcohol, (3) the evidence failed to show that Appellant was guilty of unsafe driving under 75 Pa.C.S.A. § 3731(a)(1), and (4) Craig Hanzl, an emergency technician, was unable to identify Appellant as the person from whom blood was taken at 2:18 a.m., and, therefore, the evidence failed to establish that Appellant's blood alcohol content was greater than .10% when he was driving the Jeep as is required under 75 Pa.C.S.A. § 3731(a)(4).

¶ 13 18 Pa.C.S.A. § 2504(a) provides that "[a] person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." "We have held that there is a difference between the term 'negligently' as set forth in 18 Pa.C.S. § 302(b)(4) and 'recklessly' as set forth in 18 Pa.C.S. § 302(b)(3). The latter definition encompasses gross negligence." *Commonwealth v. Comer,* 552 Pa. 527, 534, 716 A.2d 593, 597 (1998) (citation omitted). 18 Pa.C.S.A. § 302(b)(3) defines 'recklessly' as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

¶ 14 75 Pa.C.S.A. § 3735(a) provides that "[a]ny person who unintentionally causes the death of another person as a result of the violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) and who is convicted of violating section 3731 is guilty of a felony of the second degree when the violation is the *cause of death* ...." (emphasis added).

¶ 15 With regard to DUI, 75 Pa.C.S.A. § 3731(a)(1) and (4) provides the following:

(a) **Offense defined.**—A person shall not drive, operate, or be in actual physical control of the movement of a vehicle in any of the following circumstances:

(1) While under the influence of alcohol to a degree which renders the person incapable of safe driving; or

* * *

(4) While the amount of alcohol by weight in the blood of:

(i) an adult is 0.10% or greater....

¶ 16 We conclude that there was sufficient evidence to establish that Appellant acted with the recklessness contemplated by the involuntary manslaughter statute. For example, Nicholas Schwartz, the driver of the tractor-trailer, testified that he was stopped at a stop sign with his headlights on when Appellant ran directly into the tractor-trailer, without stopping, at approximately 12:50 a.m. N.T. 12/14/99 at 141–142, 144, 139. Mr. Schwartz testified that the weather was clear and the road was dry. N.T. 12/14/99 at 151.

¶ 17 Trooper Remp testified that he was one of the responding officers, and he questioned Appellant. Trooper Remp testified that Appellant smelled like beer, his eyes were bloodshot and glassy, and his speech was slurred. N.T. 12/14/99 at 207–208. Trooper Remp examined the accident scene and noted that the road was dry and the weather was clear. N.T. 12/14/99 at 202–203. Trooper Remp testified that the section of Route 183 at issue was straight and flat, N.T. 12/14/99 at 210, and that the turn Appellant should have taken was properly marked. N.T. 12/14/99 at 210. Trooper Remp testified that, in his opinion, Appellant was DUI at the time in question. N.T. 12/14/99 at 247.

¶ 18 Trooper David Gecelosky testified that he also responded to the accident and that he examined the tractor-trailer and Appellant's Jeep. N.T. 12/14/99 at 291–292. Trooper Gecelosky found no violations with regard to the tractor-trailer or the Jeep. N.T. 12/14/99 at 291–293.

Trooper Christopher Lengle testified that he went to the Lehigh Valley Hospital and questioned Appellant. Appellant admitted that he had three beers at approximately 9:00 p.m. on February 12, 1999, and that he was driving the Jeep. N.T. 12/14/99 at 317–318.

¶ 19 Craig A. Hanzl testified that he is an emergency department technician and that he was on duty at the Lehigh Valley Hospital at 2:18 a.m. on February 13, 1999. N.T. 12/14/99 at 298–300, 302. While Mr. Hanzl could not remember whether he drew blood from Appellant, the chain of custody form entered into evidence revealed that Mr. Hanzl had completed, signed, and dated the form, thereby verifying that he did, in fact, draw Appellant's blood. N.T. 12/14/99 at 301–304. Joann Sell, a laboratory technician, testified regarding the chain of custody of the blood and reported that Appellant's blood alcohol content was .17%. N.T. 12/14/99 at 356. Finally, Margaret Freeman, M.D., testified that she performed an autopsy on Mr. Wise and that Mr. Wise died from internal bleeding, which was consistent with being in an automobile accident. N.T. 12/14/99 at 279.

¶ 20 Based on the aforementioned, the evidence was sufficient to support Appellant's convictions. *See Commonwealth v. Palmer,* 751 A.2d 223 (Pa.Super.2000) (concluding that evidence was sufficient under 75 Pa.C.S.A. § 3731(a) where the appellant had glassy, bloodshot eyes, had difficulty walking, and failed field sobriety test); *Commonwealth v. Moore,* 420 Pa.Super. 484, 617 A.2d 8 (1992) (holding that evidence was sufficient for involuntary manslaughter where the defendant's vehicle crossed center line and his blood alcohol content was .15%); *Commonwealth v. Eichelberger,* 364 Pa.Super. 425, 528 A.2d 230 (1987) (holding that where defendant crossed center line, ran into oncoming ve-

hicles, and had blood alcohol content of .09%, the evidence supported conviction for homicide by vehicle).

¶ 21 Appellant next contends that the verdict was against the weight of the evidence. We find this issue to be waived.

¶ 22 In *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998), the Pennsylvania Supreme Court held that issues not included in a Pa.R.A.P.1925(b) statement are deemed waived on appeal.

> The absence of a trial court opinion poses a substantial impediment to meaningful and effective appellate review. Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process.

*Lord,* 553 Pa. at 417, 719 A.2d at 308. "When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Dowling,* 778 A.2d 683, 686 (Pa.Super.2001). "When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." *In re Estate of Daubert,* 757 A.2d 962, 963 (Pa.Super.2000). "In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." *Dowling,* 778 A.2d at 686.

¶ 23 In the case *sub judice,* Appellant's weight of the evidence issues are too vague to permit review. In his brief, Appellant raises six specific reasons why he believes the verdict was against the weight of the evidence. However, in his Pa.R.A.P. 1925(b) statement, Appellant merely stated that "[t]he verdict of the jury was against the weight of the credible evidence as to all of the charges." In its opinion, the trial court summarily dismissed Appellant's weight of the evidence claim by concluding that the verdict was not so contrary to the evidence as to require a new trial. No specific weight of the evidence issue was discussed. As such, under *Dowling, supra,* we find Appellant's weight of the evidence issues to be waived.

¶ 24 Appellant next contends that the suppression court erred (1) in failing to suppress the results of Appellant's blood alcohol test, and (2) in failing to suppress statements Appellant made to the police.

¶ 25 As a reviewing court, our role is to determine:

> whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted.
>
> When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from these factual findings. As a reviewing court, we are therefore not bound by the legal conclusions of the suppression court and must reverse that court's determination if the conclusions are in error or the law is misapplied.

*Commonwealth v. Albert,* 767 A.2d 549, 551–552 (Pa.Super.2001) (citations and quotation omitted).

¶ 26 With regard to Appellant's blood alcohol test, Appellant claims that the results should have been suppressed because (1) there is no evidence that the blood at issue was drawn for 75 Pa.C.S.A. § 1547 purposes since no officer requested

that the blood be drawn, and (2) there is no evidence that emergency personnel decided that there was probable cause that Appellant was DUI, thus permitting the drawing of blood under 75 Pa.C.S.A. § 3755.

▮ ¶ 27 In cases such as this, the search of a driver's blood and the search of the driver's medical records containing the results of the first search may occur. *Commonwealth v. Shaffer*, 714 A.2d 1035 (Pa.Super.1998), *affirmed*, 566 Pa. 592, 782 A.2d 996 (2001). Here, the first search of Appellant occurred when the hospital took blood samples. However, because the hospital did not withdraw Appellant's blood at the direction of Trooper Lengle, this search did not implicate Appellant's Fourth Amendment rights. Rather, the hospital withdrew Appellant's blood on its own initiative for its own purposes. *Commonwealth v. Riedel*, 539 Pa. 172, 177, 651 A.2d 135, 138 (1994) (citations omitted).

¶ 28 The remaining searches occurred when Trooper Lengle specifically requested that Appellant's blood be tested to determine Appellant's blood alcohol content and requested Appellant's medical records with regard thereto.

> The hospital, in complying with the trooper's requests, acted as an agent of the government: the purpose of the search[es] was to obtain [A]ppellant's blood test results for use in [Appellant's] subsequent prosecution, police initiated the search, and the Commonwealth ratified the search by using the test results to convict [A]ppellant. Consequently, the search implicated [A]ppellant's Fourth Amendment rights, and we must determine whether [A]ppellant had a reasonable expectation of privacy in [the

specific tests performed on his blood and] medical records.

*Riedel*, 539 Pa. at 178, 651 A.2d at 138 (citations and quotations omitted).

▮ ¶ 29 The Courts of this Commonwealth as well as the Third Circuit have always recognized "that an individual has a substantial privacy interest in his or her medical records." *Riedel*, 539 Pa. at 178, 651 A.2d at 138 (citations and quotations omitted). We conclude that the same is true with regard to the tests performed on one's blood. *See Commonwealth v. Franz*, 430 Pa.Super. 394, 634 A.2d 662 (1993).

> Generally, a 'search and seizure is not reasonable unless conducted pursuant to a valid search warrant upon a showing of probable cause.' However, exceptions to the warrant requirement do exist. For example, actual consent, implied consent, search incident to an arrest, and exigent circumstances may negate the necessity of obtaining a warrant before conducting a search.[5]

*Riedel*, 539 Pa. at 178, 651 A.2d at 138 (citations and quotation omitted).

¶ 30 Here, Appellant fails to raise any specific argument regarding whether Trooper Lengle had probable cause to request and obtain the blood test results. As such, we are bound by the trial court's conclusion that probable cause existed. At issue is whether an exception to the warrant requirement exists under Section 1547 or 3755. Section 1547 provides, in relevant part, the following:

> (a) **General rule.**—Any person who drivers operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or

---

**5.** Notwithstanding the exceptions, the search still must be based on probable cause to believe that the person to be searched has violated the law. *See Riedel, supra.*

urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds[6] to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol. . . .;

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

Section 3755 provides, in relevant part, the following:

**(a) General rule.**—If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3731 (relating to driving while under the influence) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transit them within 24 hours for testing to the Department of Health and specifically designated for this purpose.

Our courts have found that, together, sections 1547 and 3755 comprise a statutory scheme which, under particular circumstances, not only imply the consent of a driver to undergo chemical or blood tests, but also require hospital personnel to withdraw blood from a person, and release the test results, at the request of a police officer who has probable cause to believe the person was operating a vehicle while under the influence.

*Commonwealth v. Shaffer,* 714 A.2d 1035, 1037 (Pa.Super.1998) (quotations and quotation marks omitted).

¶ 31 "Under the Pennsylvania implied consent statute, once an officer determines there is probable cause to believe a person operated a motor vehicle under the influence of alcohol and requests that the hospital personnel withdraw blood, the officer is entitled to the release of the test results." *Commonwealth v. Barton,* 456 Pa.Super. 290, 690 A.2d 293, 298 (1997) (citation omitted). This is true even if medical staff previously drew the blood and a request by the police for a driver's BAC came after the blood was drawn. *See Barton, supra.* In this case, requiring another vial of blood to be drawn in order to facilitate Officer Lengle's request would unnecessarily narrow Sections 3755 and 1547. Rather, since the hospital previously, without police direction, drew samples of Appellant's blood, Officer Lengle's request for a BAC was properly performed on the previously drawn sample. *See Barton, supra.* We specifically note that Appellant does not dispute that, had the blood sample been drawn at Officer Lengle's request, he would have been entitled to the results. The fact that the Trooper made the request after the blood was drawn does not require a different outcome in this case. *See Barton, supra.*

¶ 32 Moreover, aside from the implied consent provisions of Sections 3755 and 1547, we conclude that Appellant expressly consented to Trooper Lengle receiving the results of his blood alcohol test. Trooper Lengle specifically told Appellant that he was going to obtain the results of a blood alcohol test, and Appellant agreed. N.T. 8/4/99 at 54. As such, we conclude that the suppression court did not err in

**6.** "Reasonable grounds" has been interpreted to mean "probable cause." *Commonwealth v.*

*Shaffer,* 714 A.2d 1035 (Pa.Super.1998), *affirmed,* 566 Pa. 592, 782 A.2d 996 (2001).

failing to suppress Appellant's blood test results.

¶ 33 Appellant next contends that various statements he made to the police should have been suppressed since he was interrogated while in custody without having received his *Miranda* warnings. In his brief, Appellant points to various specific statements. We find the issue to be waived.

¶ 34 As indicated *supra,* raising issues vaguely in a Pa.R.A .P.1925(b) statement is equivalent to not raising the issues at all. *Dowling, supra.* Here, Appellant stated the following in his Pa.R.A.P.1925(b) statement:

> The court erred in failing to suppress the statements made by [Appellant] to the police on the night of the accident in that he was in custody when th[e statements] were made and he was not advised of his Miranda rights or he had already exercised his right to remain silent prior to being questioned at the hospital.

¶ 35 Noticeably absent from Appellant's Pa.R.A.P.1925(b) statement is reference to any particular statement he made to the police. Rather, Appellant seems to indicate that all statements he made to the police on the night of the accident should have been suppressed. In addressing Appellant's issue in its Pa.R.A.P.1925(a) opinion, the trial court also did not point to any specific statement, but concluded generally that Appellant was not subject to custodial interrogation during the night in question. Since Appellant failed to identify the precise statements at issue, we conclude that his Pa.R.A.P.1925(b) statement was too vague to identify the precise issue for the trial court, and we find the issue to be waived.

¶ 36 Appellant next contends that the trial court should have granted Appellant's request for a mistrial since the district attorney made several references in his opening statement to Appellant exercising his right to speak to an attorney and remain silent. Specifically, Appellant challenges the following comments made by the prosecutor:

> (1) Trooper Remp asked [Appellant] where were you coming from? And [Appellant] said Reading. And [Trooper Remp] said where in Reading. And [Appellant] refused to answer.

N.T. 12/14/99 at 102.

> (2) Trooper Lengle also asked [Appellant] where he was that night. And as before, [Appellant] said Reading. And when Trooper Lengle asked where in Reading, [Appellant] refused to answer.

N.T. 12/14/99 at 105.

> (3) After [Appellant] refused to say where he was coming from in Reading, Trooper Remp followed that question up. And he said how much did you have to drink tonight? And [Appellant] said I better talk to a lawyer before I answer that question.

N.T. 12/14/99 at 103–104.

¶ 37 Initially, we note that "[r]eference to an accused's silence can be harmless error if corrected by adequate cautionary instructions...." *Commonwealth v. McEnany,* 446 Pa.Super. 609, 667 A.2d 1143, 1150 n. 4 (1995) (citation omitted). *See Commonwealth v. Redel,* 335 Pa.Super. 354, 484 A.2d 171 (1984). Here, Appellant indicated that he did not want a cautionary instruction, but wanted a mistrial only. N.T. 12/14/99 at 103, 107. However, as to all three statements, the trial court informed the jury that the district attorney's closing argument was not evidence. N.T. 12/17/99 at 671. *See Commonwealth v. Baez,* 554 Pa. 66, 720 A.2d 711 (1998) (noting that a prosecutor's comments do not constitute evidence).

¶ 38 Moreover, assuming, *arguendo,* that the trial court erred in failing to grant Appellant's request for a mistrial, we find the error to be harmless on another basis. *See Commonwealth v. Edmiston,* 535 Pa. 210, 634 A.2d 1078 (1993) (indicating that, in context of a trial, reference to fifth amendment rights may be analyzed under harmless error standard); *Commonwealth v. Nolen,* 535 Pa. 77, 634 A.2d 192 (1993) (holding that harmless error is applicable where reference is made to a defendant's right to remain silent); *Commonwealth v. Redel,* 335 Pa.Super. 354, 484 A.2d 171 (1984) (holding that harmless error is used where prosecutor comments on a defendant's right to remain silent).

[A]n error will be deemed harmless where the appellate court is convinced beyond a reasonable doubt that the error would not have contributed to the verdict. Guidelines for determining whether an error is harmless include: (1) whether the error was prejudicial to the defendant or if prejudicial, whether the prejudice was *de minimus;* (2) whether the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) whether the evidence of guilt was so overwhelming as established by properly admitted and uncontradicted evidence that the prejudicial effect was so insignificant by comparison to the verdict.

*Commonwealth v. Nolen,* 535 Pa. 77, 85, 634 A.2d 192, 195 (1993) (citations and footnote omitted).

¶ 39 We conclude that the evidence of Appellant's guilt was so overwhelming that the trial court's refusal to grant Appellant's request for a mistrial was, at most, harmless error. Even if the prosecutor erred in telling the jury that Appellant refused to tell the officers where he was coming from and invoked his right to an attorney with regard to questioning by Trooper Remp concerning consumption of beer, the evidence of Appellant's DUI offenses was overwhelming. *See Commonwealth v. Weir,* 738 A.2d 467 (Pa.Super.1999) (discussing harmless error with regard to DUI offenses). As discussed previously, an eyewitness, three police officers, an emergency medical technician, and a laboratory technician established that Appellant committed the crimes for which he was convicted.

¶ 40 Appellant next contends that the trial court abused its discretion in permitting the Commonwealth to introduce into evidence Appellant's address, and a diagram depicting the distance of Appellant's address to the accident scene, as circumstantial evidence that Appellant was familiar with the intersection where the accident occurred. Specifically; Appellant contends that the evidence was irrelevant.

Questions concerning the admissibility of evidence are within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. Rule 401 of the Pennsylvania Rules of Evidence states, '[r]elevant evidence' means any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 403 states, '[a]lthough relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'

*Commonwealth v. L.N.,* 787 A.2d 1064, 2001 WL 1580132 *2 (Pa.Super. filed

12/12/01) (citations and quotations omitted).

¶ 41 The record reflects that, during opening argument, defense counsel indicated several times that the accident at issue occurred because Appellant was not from Reading and was unfamiliar with Route 183. N.T. 12/14/99 at 110–116. As such, defense counsel argued, Appellant went the wrong way when he approached the intersection at issue, which caused the accident. N.T. 12/14/99 at 112. A continued defense theory was that the accident occurred because Appellant was unfamiliar with Route 183 and had made a mistake at the intersection at issue. N.T. 12/14/99 at 184.

¶ 42 The Commonwealth introduced the diagram to show that Appellant's present address was only 9.6 miles away from the intersection at issue and that his former address was only 11 miles away from the intersection. N.T. 12/14/99 at 242–244. We conclude that this evidence was relevant to show whether Appellant was familiar with Route 183. Also, we note that defense counsel "opened the door" concerning Appellant's familiarity with Route 183. As such, the Commonwealth properly responded to the argument with evidence concerning the proximity of Appellant's residence to the accident scene. *See Commonwealth v. Hawkins*, 549 Pa. 352, 701 A.2d 492 (1997) (holding that where defense opens the door on the topic, the prosecutor may properly respond).

¶ 43 Finally, Appellant contends that the trial court erred in excluding evidence of other accidents, which occurred at the intersection of New Schaefferstown Road and Route 183. Specifically, Appellant contends that the evidence was relevant as to whether his DUI caused the accident at issue.

¶ 44 This Court has held that:

'An accused has a fundamental right to present defensive evidence so long as such evidence is relevant and not excluded by an established evidentiary rule.' Once it is determined that the proffered evidence was relevant, due process requires its admission. 'Even the most myopic interpretation of [Article I, Section 9 of the Pennsylvania Constitution] would necessarily concede the right to offer relevant evidence to challenge a material issue of fact.' 'Causation is an issue of fact for the jury.'

*Commonwealth v. Bartolacci*, 409 Pa.Super. 456, 598 A.2d 287, 289 (1991) (quotation omitted). In *Bartolacci*, this Court specifically held that proof of similar accidents may be introduced to show that the dangerous condition of the roadway caused an accident and death, instead of a defendant's driving while intoxicated.

¶ 45 In the case *sub judice*, the trial court permitted Appellant to introduce evidence of automobile accidents which occurred northbound on Route 183 at the intersection of New Schaefferstown Road, which is the direction Appellant was traveling at the time of the accident. Specifically, the trial court permitted testimony from Charles Nutter, the chief of the Bernville Community Fire Company. Mr. Nutter testified that "there [are] a lot of accidents at this intersection," N.T. 12/14/99 at 179, and that the fire company had documented forty-four accidents at the intersection since 1986. N.T. 12/14/99 at 185. Mr. Nutter testified that the forty-four accidents encompassed accidents from all directions. N.T. 12/14/99 at 185–186. He further testified that it was a common occurrence for drivers to miss the northbound turn, as Appellant alleged he did, and hit oncoming traffic or nearby houses. N.T. 12/14/99 at 186.

¶ 46 The trial court also permitted testimony from Thelma Hoffman, who testified that she lived at the intersection at issue

and that motorists often drive into her yard because they miss the turn for Route 183. N.T. 12/14/99 at 395–396, 401–403. She testified that at least three fatalities have occurred at the intersection since she has lived in the area. N.T. 12/14/99 at 401. Appellant was also permitted to introduce the expert testimony of Kevin O'Connor, a licensed engineer, who testified that he believed the intersection at issue was dangerous and the cause of the accident at issue. N.T. 12/14/99 at 453–454.

¶ 47 Based on all of the aforementioned, we conclude that the trial court properly permitted Appellant to introduce evidence of other accidents which occurred at the intersection at issue. While ·Appellant suggests that the trial court limited his evidence to that of accidents occurring northbound only, we find this issue to be meritless. Mr. Nutter testified that forty-four accidents occurred from all directions. Any error the trial court made in excluding additional evidence would be harmless error since the evidence would be cumulative. *See Nolen, supra.* As such, we find no relief is due on this basis.

¶ 48 Affirmed.