J-S16019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SARAH RUTH DEFER, | |
| Appellant | No. 1119 MDA 2014 |

Appeal from the Judgment of Sentence of June 6, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0003966-2013

BEFORE:  PANELLA, OLSON and OTT, JJ.

MEMORANDUM BY OLSON, J.:                **FILED AUGUST 19, 2015**

Appellant, Sarah Ruth Defer, appeals from the judgment of sentence entered on June 6, 2014.  After careful consideration of the arguments raised before this Court, we affirm.

During the suppression hearing, the parties stipulated to the facts contained in the Wyomissing Police Department Incident Report Form. Wyomissing Police Officer Robert J. Pehlman created the form, wherein he declared:

> At [10:24 p.m.] on Sunday[,] March 31, 2013[,] I responded to 845 Woodland Road for [a] report of an accident with injuries.  On location I discovered a one vehicle accident involving a white 2013 Dodge [A]venger bearing North Carolina registration [].  The car was apparently attempting to negotiate a slight left turn and struck a curb and guard rail on the right side of the road, throwing the vehicle to the left side of the [r]oad, where it became disabled against the curb on that side.  Inside the vehicle, and seated in the passenger seat, was a white

female subsequently identified as [Appellant,] of Laveen[,] Arizona. [Appellant] was wearing a Reading Hospital employee identification and was in possession of a [V]ocera belonging to the hospital. [Appellant] was barely conscious and unable to provide any information other than to say that she was the operator of the vehicle at the time of the crash. [Appellant] must have been thrown [into] the passenger seat from the driver's side on impact. [Appellant] had visible injuries to her face and appeared to be visibly intoxicated. There was a strong odor of alcohol emanating from the vehicle. . . .

After obtaining the necessary documentation from the vehicle and a bag in the vehicle belonging to [Appellant], I followed Western Berks ambulance to the Reading Hospital. [Appellant] was not conscious enough to speak to, and was immediately sedated by the [h]ospital staff in order to facilitate treatment. I requested that blood be drawn[,] at which time a Geriann Kuberski drew the blood at exactly [11:28 p.m.] and prepared the specimen to be transported to [St. Joseph's Hospital] to ascertain a blood [alcohol] content. . . .

I left [] Reading Hospital at exactly [11:39 p.m.], and arrived at [St. Joseph's Hospital] at [11:50 p.m.] where I delivered the [specimen] to the laboratory at that location. I subsequently received the laboratory report which was certified on April 2, 2013. The blood alcohol content for [Appellant], as documented in [the] specimen, was 0.264. Charges of driving under the influence to be filed against [Appellant].

Incident Report Form, dated 4/14/13, at 1.

Following Appellant's arrest for driving under the influence of alcohol ("DUI"),[1] Appellant filed a pre-trial motion to suppress. In relevant part, Appellant's suppression motion reads:

---

[1] Specifically, the Commonwealth charged Appellant with DUI, highest rate of alcohol (second offense). *See* 75 Pa.C.S.A. § 3802(c).

## I. Factual Background

1. On or about March 31, 2013[, Appellant] was involved in a single vehicle motor vehicle crash in Wyomissing, Berks County, [Pennsylvania].

2. [Appellant] was rendered unconscious and was taken by ambulance to the Reading Hospital and Medical Center.

3. At the Hospital, Wyomissing Police Officer Pehlman instructed the hospital to draw blood from [Appellant; Appellant] was still unconscious at this time. Officer Pehlman then transported the blood for blood alcohol testing.

4. Officer Pehlman did not obtain or attempt to obtain a search warrant for [Appellant's] blood.

5. Officer Pehlman did not have consent to draw blood.

6. There was no exigent circumstance, which would have waived the warrant requirement.

7. This procedure is known as a "forced blood draw."

8. [Appellant] was subsequently charged with DUI and related offenses.

9. On April 17, 2013, the [United States] Supreme Court found that "forced blood draws" were a violation of a defendant's [F]ourth [A]mendment rights. [*Missouri v. McNeely*, ___ U.S. ___, 133 S.Ct. 1552, 1568 (2013)]. Specifically, the Court noted that blood could only be withdrawn with consent or a search warrant.

## II.  Suppression

10. All of the foregoing paragraphs are incorporated herein by reference.

11. As [Appellant's] blood was a "forced blood draw" made in violation of her [F]ourth [A]mendment rights, the blood,

- 3 -

the testing results[,] and any fruits derived therefrom are unlawful and must be suppressed under the [United States] and Pennsylvania Constitutions.

Appellant's Pre-Trial Motion, 9/4/13, at 1-2.

The Commonwealth opposed Appellant's motion and argued that *McNeely* did not apply to Appellant's case. As the Commonwealth argued, *McNeely* was concerned solely with the "exigent circumstances" exception to the warrant requirement. In this case, however, the Commonwealth claimed that Appellant's blood was taken pursuant to the "consent" exception to the warrant requirement. Commonwealth's Response, 12/2/13, at 1-2. Specifically, the Commonwealth argued that, pursuant to 75 Pa.C.S.A. § 1547(a), since Appellant was the driver of an automobile that was involved in a motor vehicle accident and since Officer Pehlman had probable cause to believe that Appellant was drunk, Appellant impliedly consented to the blood draw. **See** 75 Pa.C.S.A. § 1547(a). The Commonwealth further argued that, under 75 Pa.C.S.A. § 3755, Officer Pehlman did not need to obtain a warrant or to demonstrate exigent circumstances in order to instruct the hospital staff to perform the blood draw while Appellant received treatment in the hospital for injuries she sustained as a result of the motor vehicle accident. **See** Commonwealth's Response, 12/2/13, at 1-2; 75 Pa.C.S.A. § 3755(a). Rather, the Commonwealth argued, Appellant's consent to the search was implied under the circumstances. Commonwealth's Response, 12/2/13, at 2; **see also** **Commonwealth v. Riedel**, 651 A.2d 135, 139-140 (Pa. 1994) ("[t]ogether,

- 4 -

[sections 1547 and 3755] comprise a statutory scheme that implies the consent of a driver to undergo chemical blood testing under particular circumstances").

On November 18, 2014, the trial court held a hearing on Appellant's suppression motion, where the parties stipulated to the facts contained in Officer Pehlman's Incident Report Form. The trial court denied Appellant's motion on December 13, 2014.

Following a bench trial, the trial court found Appellant guilty of DUI under 75 Pa.C.S.A. § 3802(c) and, on June 6, 2014, the trial court sentenced Appellant to serve a term of 90 days to 5 years in prison.

On Monday, July 7, 2014, Appellant filed a timely notice of appeal from her judgment of sentence. Appellant raises one claim on appeal:

> Whether th[e trial] court erred in denying [Appellant's pre-trial] suppression motion, where the blood drawn from [Appellant] was obtained without a warrant or exigent circumstance[s] in violation of [Appellant's] Fourth Amendment rights and no other blood sample has been shown to be admissible?

Appellant's Brief at 4 (some internal capitalization omitted).

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047-1048 (Pa. Super. 2012) (*en banc*); ***see also*** Pa.R.Crim.P. 581(H). With respect to an

appeal from the denial of a motion to suppress, our Supreme Court has declared:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Eichinger***, 915 A.2d 1122, 1134 (internal citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Gallagher***, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, we note that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing.[2] ***In re L.J.***, 79 A.3d 1073, 1087 (Pa. 2013).

---

[2] On October 30, 2013, our Supreme Court decided ***In re L.J.*** In ***L.J.***, our Supreme Court held that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. ***In re L.J.***, 79 A.3d at 1087. Prior to ***L.J.***, this Court routinely held that, when reviewing a suppression court's ruling, our scope of review included "the evidence presented both at the suppression hearing and at trial." ***See Commonwealth v. Charleston***, 16 A.3d 505, 516 (Pa. Super. 2011), *quoting* ***Commonwealth v. Chacko***, 459 A.2d 311, 317 n.5 (Pa. 1983). ***L.J.*** thus narrowed our scope of review of suppression court rulings to the evidence presented at the suppression hearing. In this case,
*(Footnote Continued Next Page)*

Appellant's brief to this Court is relatively undeveloped, disjointed, conclusory, and vague. However, it is apparent that the basis for Appellant's entire claim is her contention that Pennsylvania's implied consent statute is grounded in the "exigent circumstances" exception to the warrant requirement. According to Appellant, since **McNeely** "has eliminated a *per se* exigency in DUI blood draw cases," "Pennsylvania can no longer recognize a *per se* exigency either." Appellant's Brief at 12-13. We conclude that Appellant's claim on appeal does not entitle her to relief.

"The Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures." **Commonwealth v. McAdoo**, 46 A.3d 781, 784 (Pa. Super. 2012). "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." **Commonwealth v. Strickler**, 757 A.2d 884, 888 (Pa. 2000). As the Pennsylvania Supreme Court has held, "exceptions to the warrant requirement do exist. For example, actual consent, implied consent, search incident to lawful arrest, and exigent circumstances may negate the necessity of obtaining a warrant before conducting a search." **Riedel**, 651 A.2d at 139 (internal footnote omitted).

*(Footnote Continued)* ⸻

Appellant's suppression hearing occurred after **L.J.** was decided. Therefore, the procedural rule announced in **L.J.** applies to the case at bar.

Appellant bases her claim of trial court error entirely upon *McNeely*. As such, we will begin our analysis with an examination of *McNeely*.

In *McNeely*, a Missouri police officer pulled McNeely's vehicle over and arrested him for DUI. After McNeely refused to provide the officer with a breath-test sample, the officer transported McNeely to a hospital and asked him whether he would consent to a blood test. "Reading from a standard implied consent form, the officer explained to McNeely that under state law refusal to submit voluntarily to the test would lead to the immediate revocation of his driver's license for one year and could be used against him in a future prosecution." *McNeely*, ____ U.S. at ____, 133 S.Ct. at 1556-1557. McNeely refused to consent to the blood test. *Id.* ____ U.S. at ____, 133 S.Ct. at 1557.

Notwithstanding McNeely's explicit refusal to consent to the blood test – and the fact that the officer had not obtained a warrant to search McNeely's person – the officer directed a hospital employee to take McNeely's blood. The employee took the blood sample and later testing revealed that McNeely's blood alcohol content was in excess of the legal limit. *Id.* ____ U.S. at ____, 133 S.Ct. at 1557.

Following McNeely's arrest, McNeely filed a suppression motion and claimed that the results of his blood test must be suppressed because "under the circumstances, taking his blood for chemical testing without first obtaining a search warrant violated his rights under the Fourth Amendment." *Id.* ____ U.S. at ____, 133 S.Ct. at 1557. The trial court agreed with McNeely

and ordered the chemical test results suppressed; the Missouri Supreme Court affirmed.  Both state courts concluded that, under the totality of the circumstances, exigent circumstances did not justify the warrantless search of McNeely's person.  *Id.* ___ U.S. at ___, 133 S.Ct. at 1557.

The United States Supreme Court granted the State's petition for writ of *certiorari* upon the following issue:  "whether the natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases."  *Id.* ___ U.S. at ___, 133 S.Ct. at 1556.  The Supreme Court concluded that the natural metabolization of alcohol in the bloodstream did not present a *per se* exigency and that, "consistent with Fourth Amendment principles, [] exigency in [drunk-driving cases] must be determined case by case based on the totality of the circumstances."  *Id.* ___ U.S. at ___, 133 S.Ct. at 1556 and 1558.

The Supreme Court began its analysis by noting that the "compelled physical intrusion beneath McNeely's skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation" constituted a search for Fourth Amendment purposes and that the invasion into McNeely's body "implicate[d McNeely's] most personal and deep-rooted expectations of privacy."  *Id.* ___ U.S. at ___, 133 S.Ct. at 1558 (internal quotations and citations omitted).  As the Supreme Court explained, under its precedent, "a warrantless search of the person is reasonable only if it falls

within a recognized exception" to the warrant requirement. "One well-recognized exception, and the one at issue in [**McNeely**], applie[d] when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Id.* ___ U.S. at ___, 133 S.Ct. at 1558 (internal quotations and citations omitted). In particular, the Supreme Court explained, it has "recognized that in some circumstances law enforcement officers may conduct a search without a warrant to prevent the imminent destruction of evidence." *Id.* ___ U.S. at ___, 133 S.Ct. at 1559.

The **McNeely** Court noted that, in applying the exigent circumstances exception, Supreme Court precedent requires that a court look "to the totality of the circumstances" and determine whether "there [was a] compelling need for official action and no time to secure a warrant." *Id.* ___ U.S. at ___, 133 S.Ct. at 1559. Nevertheless, before the Supreme Court, the State of Missouri requested that the Court "adopt [a] categorical rule" of exigency in drunk-driving cases. As Missouri argued:

> whenever an officer has probable cause to believe an individual has been driving under the influence of alcohol, exigent circumstances will necessarily exist because [blood alcohol content] evidence is inherently evanescent. As a result, the State claims that so long as the officer has probable cause and the blood test is conducted in a reasonable manner, it is categorically reasonable for law enforcement to obtain the blood sample without a warrant.

*Id.* ___ U.S. at ___, 133 S.Ct. at 1560.

The Supreme Court recognized the fact that, "as a result of the human body's natural metabolic processes, the alcohol level in a person's blood begins to dissipate once the alcohol is fully absorbed and continues to decline until the alcohol is eliminated." *Id.* ___ U.S. at ___, 133 S.Ct. at 1560. Nevertheless, the *McNeely* Court concluded that it would not depart from its "totality of the circumstances" test in drunk-driving cases and, thus, it would not adopt Missouri's proposed "categorical rule" of exigency in such cases. *Id.* ___ U.S. at ___, 133 S.Ct. at 1560-1561. Although the Supreme Court "d[id] not doubt that some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test," the *McNeely* Court held: "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* ___ U.S. at ___, 133 S.Ct. at 1561.

From the above analysis, it is apparent that *McNeely* focused solely upon the exigent circumstances exception to the warrant requirement. Indeed, the Supreme Court noted that McNeely **explicitly refused** to

consent to a blood test; therefore, the Supreme Court did not consider the validity or effect of Missouri's "implied consent" statute.[3]

Despite these circumstances, Appellant here bases her entire claim for relief upon *McNeely*. According to Appellant, the Commonwealth's implied consent statute is grounded upon the exigencies of "time's dissipating effect on the evidence." Appellant's Brief at 12-13, *quoting* *Commonwealth v. Kohl*, 615 A.2d 308, 315 (Pa. 1992). As Appellant argues, since *McNeely* held that "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant," 75 Pa.C.S.A. §§ 1547(a) and 3755 no longer support warrantless blood draws on the basis of implied consent. Therefore, Appellant claims, *McNeely* is "directly on point" and we should vacate her judgment of sentence, reverse the trial court's suppression order, and remand for a new trial.

_____

[3] In *McNeely*, a plurality of the Court recognized (with seeming approval) the fact that "all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to [blood alcohol content] testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense." *McNeely*, ___ U.S. at ___, 133 S.Ct. at 1566. The plurality recognized that these implied consent laws "impose significant consequences when a motorist withdraws consent" and are one of the "legal tools" that states use "to enforce their drunk-driving laws and to secure [blood alcohol content] evidence without undertaking warrantless nonconsensual blood draws." *Id.* ___ U.S. at ___, 133 S.Ct. at 1566.

The Commonwealth takes a contrary position. Arguing that **McNeely** has no applicability to the case at bar, the Commonwealth maintains that **McNeely** concerned the "exigent circumstances" exception to the warrant requirement, whereas the case at bar concerns the "consent" exception to the warrant requirement. In particular, the Commonwealth claims, pursuant to 75 Pa.C.S.A. § 1547(a), Appellant gave her "implied consent" to the blood test and, since she was unconscious prior to and during the search, Appellant never revoked this consent. The Commonwealth reasons that, since Appellant never revoked her implied consent, Officer Pehlman did not need to obtain a warrant or demonstrate exigent circumstances to perform the search of her person, as 75 Pa.C.S.A. § 3755 permitted him to require hospital personnel to withdraw Appellant's blood without a warrant. Therefore, according to the Commonwealth, Appellant's claim on appeal must fail.

We conclude Appellant's specific argument to this Court does not entitle her to relief.

As is relevant to the current case, Pennsylvania has an "implied consent" law that reads:

> **[75 Pa.C.S.A.] § 1547. Chemical testing to determine amount of alcohol or controlled substance**
>
> **(a) General rule.**--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or

the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of . . . 3802 (relating to driving under influence of alcohol or controlled substance) . . .; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

**(b) Suspension for refusal.**—

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

(ii) For a period of 18 months if any of the following apply: . . .

. . .

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

(ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same

> right of appeal as provided for in cases of suspension for
> other reasons.

75 Pa.C.S.A. § 1547(a) and (b).[4]

Also relevant to the case at bar is 75 Pa.C.S.A. § 3755, entitled "[r]eports by emergency room personnel." In pertinent part, this statute reads:

> **[75 Pa.C.S.A.] § 3755. Reports by emergency room personnel**
>
> **(a) General rule.--**If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. . . . Test results shall be released upon request of the person tested, his attorney, his physician or governmental officials or agencies.

75 Pa.C.S.A. § 3755(a).

A panel of this Court has previously explained:

> together, sections 1547 and 3755 comprise a statutory scheme which, under particular circumstances, not only

---

[4] Of note, Appellant has never claimed that she was "under arrest" at the time the blood sample was taken and Appellant has never claimed that she was entitled to the statutory right of refusal, as provided in 75 Pa.C.S.A. § 1547(b). *See*, *e.g.*, *Commonwealth v. Myers*, ___ A.3d ___, ___, 2015 WL 3652667, at 7 (Pa. Super. 2015).

imply the consent of a driver to undergo chemical or blood tests, but also require hospital personnel to withdraw blood from a person, and release the test results, at the request of a police officer who has probable cause to believe the person was operating a vehicle while under the influence.

*Commonwealth v. Seibert*, 799 A.2d 54, 64 (Pa. Super. 2002) (internal quotations and citations omitted); *see also Riedel*, 651 A.2d at 139-140 ("[t]ogether, [sections 1547 and 3755] comprise a statutory scheme that implies the consent of a driver to undergo chemical blood testing under particular circumstances").

At the outset, Appellant is incorrect to claim that Pennsylvania's implied consent law is based solely upon the exigent circumstances exception to the warrant requirement and "time's dissipating effect on the evidence." Rather, implied consent laws – such as Pennsylvania's implied consent law – were enacted for a variety of reasons, including: "to address the hazard of impaired drivers on public roads," *Todd v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 723 A.2d 655, 658 (Pa. 1999); "to facilitate [the] prosecution of chemically impaired drivers," *Riedel*, 651 A.2d at 141; "to rid the highways of drunk driving," *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 619 (Mo. 2002) (internal quotations and citations omitted); and, as "a bargain between drivers and the state[; i]n exchange for the use of the roads within the state, drivers consent to have their breath [or blood] tested if a police officer has reason to believe the driver is intoxicated," *State v. Morale*, 811 A.2d 185, 188 (Vt. 2002).

Further, as both our Supreme Court and this Court have held, Pennsylvania's implied consent law is not a mere subpart of the "exigent circumstances" exception to the warrant requirement. Rather, our Courts have held that an individual's implied consent in drunk-driving cases satisfies the "**consent**" exception to the warrant requirement – which is an entirely separate exception from the "exigent circumstances" exception. **Riedel**, 651 A.2d at 139-140 (our Supreme Court held: "[t]ogether, [sections 1547 and 3755] comprise a statutory scheme that **implies the consent** of a driver to undergo chemical blood testing under particular circumstances") (emphasis added); **Seibert**, 799 A.2d at 64 ("together, sections 1547 and 3755 comprise a statutory scheme which, under particular circumstances, . . . **imply the consent** of a driver to undergo chemical or blood tests") (emphasis added); **Commonwealth v. Keller**, 823 A.2d 1004, 1010 (Pa. Super. 2003) (interpreting sections 1547 and 3755 and holding that, since the trooper had probable cause to believe the defendant was driving under the influence of alcohol, "[the defendant's] **consent to undergo chemical or blood tests was implied**, and [hospital] personnel were required to withdraw blood from [the defendant] and release the test results") (emphasis added); **Commonwealth v. Eisenhart**, 611 A.2d 681, 683 (Pa. 1992) ("[b]ecause his **consent is implied until the person actually refuses**, under subsection (a) of Section 1547, his actual consent would be no different from his remaining silent. Thus, under the Implied Consent provision, Section 1547(a), testing is allowed absent an affirmative showing

of the subject's refusal to consent to the test at the time that the testing is administered") (emphasis added); *see also Commonwealth v. Shaw*, 770 A.2d 295, 301-302 (Pa. 2001) (Castille, J. dissenting) (explaining: "[T]he *Riedel* Court simply acknowledged and applied certain bedrock principles of search and seizure jurisprudence: *i.e.*, that searches without a warrant are generally unreasonable, but exceptions to the warrant requirement exist, including actual and implied consent, where warrantless searches have been deemed reasonable. [The Pennsylvania Supreme] Court's construction of Article I, § 8 is identical in this particular instance, *i.e.*, [the Supreme Court] recognize[s] a preference for warrants, while also recognizing the reasonableness of warrantless searches in some circumstances, including consent cases") (internal citations and emphasis omitted); *see also Commonwealth v. McCoy*, 975 A.2d 586, 589 (Pa. 2009) (holding, in a Sixth Amendment "right to counsel" case that, "[b]ased upon the statutory language [contained in section 1547(a)], **it is clear that if an individual chooses to operate a motor vehicle in this Commonwealth, the consent to submit to a chemical test has already been given**") (emphasis added).

On appeal to this Court, Appellant simply claims that, since Pennsylvania's implied consent statute is based upon the exigencies of "time's dissipating effect on the evidence," *ergo*, under *McNeely*, the implied consent statute is unconstitutional because it "recognize[s] a *per se* exigency." From the above discussion, it is apparent that Appellant's claim

on appeal necessarily and immediately fails, as Pennsylvania's implied consent law was enacted for a variety of reasons apart from the exigencies that exist in drunk-driving cases and both our Supreme Court and this Court have held that the implied consent law falls under the "**consent**" exception to the warrant requirement – not the "exigent circumstances" exception. Since Appellant has raised no claim that Pennsylvania's implied consent law is otherwise unconstitutional (either facially or as applied) or that, under the totality of the circumstances in this case, her implied consent was not objectively valid, we conclude that Appellant is not entitled to relief in this case.[5, 6, 7]  As such, we affirm Appellant's judgment of sentence.

_____

[5] Within Appellant's brief to this Court, Appellant makes the conclusory statement that 75 Pa.C.S.A. § 3755(a) "has clearly been invalidated by the *McNeely* decision."  Appellant's Brief at 10.  However, Appellant has not provided any explanation whatsoever as to why section 3755(a) "has clearly been invalidated" by *McNeely*.  *See* Appellant's Brief at 10-11.  Therefore, Appellant's claim is waived.  *Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 396 (Pa. Super. 2011) (holding that the Superior Court "may not act as counsel for an appellant and develop arguments on [her] behalf").  Further, we note that Appellant does not explain why *McNeely* "clearly" invalidated section 3755(a), given that *McNeely* was concerned with the **exigent circumstances** exception and our Courts have held that "sections 1547 and 3755 comprise a statutory scheme which, under particular circumstances, . . . **imply the consent** of a driver to undergo chemical or blood tests." *Seibert*, 799 A.2d at 64 (emphasis added).

[6] Within Appellant's brief, Appellant also declares:  "Appellant would also point out that it is not 100% clear that [section] 3755 even applies" because "[s]ection 3755 applies to blood drawn at the initiation of medical personnel [whereas] in this case the blood was drawn at the request of the police." Appellant's Brief at 11.  To the extent this equivocal statement constitutes a claim for relief, Appellant did not raise the claim before the trial court. Therefore, the claim is waived.  Pa.R.A.P. 302(a) ("[i]ssues not raised in the
*(Footnote Continued Next Page)*

lower court are waived and cannot be raised for the first time on appeal"). Moreover, we note that, in ***Shaw***, our Supreme Court explained:

> [75 Pa.C.S.A. §] 3755(a) is, to say the least, inartfully drafted. For some vague and curious reason, the legislature has required a probable cause determination without specifying who is to make such determination, or how such an abstract requirement is to be met. **The request of a police officer**, based on probable cause to believe a violation of [the law relating to driving under the influence of alcohol or a controlled substance], **would seem to satisfy the probable cause requirement and therefore mandate that hospital personnel conduct [blood alcohol content] testing**. Likewise, a determination by hospital personnel familiar with Section 3755(a), that probable cause existed to believe that a person requiring treatment had violated [the law relating to driving under the influence of alcohol or a controlled substance], would also seem to mandate that hospital personnel conduct [blood alcohol content] testing.

***Shaw***, 770 A.2d at 299 n.3 (emphasis added); ***Commonwealth v. Barton***, 690 A.2d 293, 299 (Pa. Super. 1997) ("[w]e therefore hold that, under the statutory scheme developed through sections 1547 and 3755, once an officer establishes probable cause to believe that a person operated a motor vehicle under the influence, and subsequently requests that hospital personnel withdraw blood samples for testing of alcohol content, the officer is entitled to obtain the results of such tests, regardless of whether the test was performed for medical purposes or legal purposes").

[7] Within Appellant's brief, Appellant implies that ***McNeely*** has rendered Pennsylvania's implied consent statute unconstitutional. ***See*** Appellant's Brief at 14. ***McNeely*** does not stand for the broad proposition suggested by Appellant. Certainly, ***McNeely*** merely rejected Missouri's claim that "the natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." ***McNeely***, ___ U.S. at ___, 133 S.Ct. at 1556. Thus, ***McNeely*** did not invalidate implied consent statutes – it was simply not concerned with such statutes. Further, even after ***McNeely***, the police may still claim that exigent circumstances necessitated a warrantless blood draw. However, as

*(Footnote Continued Next Page)*

Judgment of sentence affirmed. Jurisdiction relinquished.

Judge Panella joins.

Judge Ott concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/2015

_(Footnote Continued)_ ————————

our Supreme Court has explained, "consistent with Fourth Amendment principles, [] exigency in [drunk-driving cases] must be determined case by case based on the totality of the circumstances." **Id.** ___ U.S. at ___, 133 S.Ct. at 1556 and 1558.