J-E01009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SARAH RUTH DEFER, | |
| Appellant | No. 1119 MDA 2014 |

Appeal from the Judgment of Sentence of June 6, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0003966-2013

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN, LAZARUS, MUNDY, OLSON, OTT, and STABILE, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 20, 2016**

Appellant, Sarah Ruth Defer, appeals from the judgment of sentence entered on June 6, 2014.  After careful consideration of the arguments raised before this Court, we affirm.

This case centers on the facts contained in the Wyomissing Police Department Incident Report Form, which the parties stipulated to at a hearing on Appellant's motion to suppress.  Wyomissing Police Officer Robert J. Pehlman created the Incident Report Form, wherein he wrote:

> At [10:24 p.m.] on Sunday[,] March 31, 2013[,] I responded to 845 Woodland Road for [a] report of an accident with injuries.  On location I discovered a one vehicle accident involving a white 2013 Dodge [A]venger bearing North Carolina registration [].  The car was apparently attempting to negotiate a slight left turn and struck a curb and guard rail on the right side of the road, throwing the vehicle to the left side of the [r]oad, where it

became disabled against the curb on that side. Inside the vehicle, and seated in the passenger seat, was a white female subsequently identified as [Appellant,] of Laveen[,] Arizona. [Appellant] was wearing a Reading Hospital employee identification and was in possession of a [V]ocera belonging to the hospital. [Appellant] was barely conscious and unable to provide any information other than to say that she was the operator of the vehicle at the time of the crash. [Appellant] must have been thrown [into] the passenger seat from the driver's side on impact. [Appellant] had visible injuries to her face and appeared to be visibly intoxicated. There was a strong odor of alcohol emanating from the vehicle. . . .

After obtaining the necessary documentation from the vehicle and a bag in the vehicle belonging to [Appellant], I followed Western Berks ambulance to the Reading Hospital. [Appellant] was not conscious enough to speak to, and was immediately sedated by the [h]ospital staff in order to facilitate treatment. I requested that blood be drawn[,] at which time a Geriann Kuberski drew the blood at exactly [11:28 p.m.] and prepared the specimen to be transported to [St. Joseph's Hospital] to ascertain a blood [alcohol] content. . . .

I left [] Reading Hospital at exactly [11:39 p.m.], and arrived at [St. Joseph's Hospital] at [11:50 p.m.] where I delivered the [specimen] to the laboratory at that location. I subsequently received the laboratory report which was certified on April 2, 2013. The blood alcohol content for [Appellant], as documented in [the] specimen, was 0.264. Charges of driving under the influence to be filed against [Appellant].

Incident Report Form, dated 4/14/13, at 1.

Following Appellant's arrest for driving under the influence of alcohol ("DUI"),[1] Appellant filed a pre-trial motion to suppress. In relevant part, Appellant's suppression motion reads:

### I. Factual Background

1. On or about March 31, 2013[, Appellant] was involved in a single vehicle motor vehicle crash in Wyomissing, Berks County, [Pennsylvania].

2. [Appellant] was rendered unconscious and was taken by ambulance to the Reading Hospital and Medical Center.

3. At the Hospital, Wyomissing Police Officer Pehlman instructed the hospital to draw blood from [Appellant; Appellant] was still unconscious at this time. Officer Pehlman then transported the blood for blood alcohol testing.

4. Officer Pehlman did not obtain or attempt to obtain a search warrant for [Appellant's] blood.

5. Officer Pehlman did not have consent to draw blood.

6. There was no exigent circumstance, which would have waived the warrant requirement.

7. This procedure is known as a "forced blood draw."

8. [Appellant] was subsequently charged with DUI and related offenses.

9. On April 17, 2013, the [United States] Supreme Court found that "forced blood draws" were a violation of a defendant's [F]ourth [A]mendment rights. [**Missouri v.**

_____

[1] Specifically, the Commonwealth charged Appellant with DUI, highest rate of alcohol (second offense). **See** 75 Pa.C.S.A. § 3802(c).

> ***McNeely***, \_\_\_ U.S. \_\_\_, 133 S.Ct. 1552, 1568 (2013)].
> Specifically, the Court noted that blood could only be
> withdrawn with consent or a search warrant.

## II. Suppression

> 10. All of the foregoing paragraphs are incorporated herein
> by reference.
>
> 11. As [Appellant's] blood was a "forced blood draw" made
> in violation of her [F]ourth [A]mendment rights, the blood,
> the testing results[,] and any fruits derived therefrom are
> unlawful and must be suppressed under the [United States]
> and Pennsylvania Constitutions.

Appellant's Pre-Trial Motion, 9/4/13, at 1-2.[2]

Within Appellant's motion to suppress and brief in support of her motion to suppress, Appellant **never once** cited to or mentioned 75 Pa.C.S.A. § 1547 (which is the Commonwealth's implied consent statute) or 75 Pa.C.S.A. § 3755 (which is entitled "[r]eports by emergency room personnel" – and which granted Officer Pehlman the statutory right to both have the hospital take Appellant's blood and receive the blood alcohol test results without a warrant). ***See Commonwealth v. Riedel***, 651 A.2d 135, 139-140 (Pa. 1994) ("[t]ogether, [sections 1547 and 3755] comprise a statutory scheme that implies the consent of a driver to undergo chemical blood testing under particular circumstances"). Further, within Appellant's

---

[2] On December 2, 2013, Appellant filed a "Supplemental Omnibus Pretrial Motion." However, the supplemental pre-trial motion did not raise any additional relevant claim or state any additional relevant averment. ***See*** Appellant's Supplemental Omnibus Pretrial Motion, 12/2/13, at 1-4.

motion to suppress and brief in support of her motion to suppress, Appellant **never once** claimed that the Commonwealth's implied consent law or the "[r]eports by emergency room personnel" law were either facially unconstitutional or unconstitutional as applied to her case.

The Commonwealth opposed Appellant's motion and argued that the United States Supreme Court's opinion in *McNeely* – which Appellant solely relied upon in her suppression motion – did not apply to Appellant's case. As the Commonwealth argued, *McNeely* was concerned only with the "exigent circumstances" exception to the warrant requirement. In this case, however, the Commonwealth claimed that Appellant's blood was taken pursuant to the "consent" exception to the warrant requirement. Commonwealth's Response, 12/2/13, at 1-2. Specifically, the Commonwealth argued that, pursuant to 75 Pa.C.S.A. § 1547(a), since Appellant was the driver of an automobile that was involved in a motor vehicle accident and since Officer Pehlman had probable cause to believe that Appellant was drunk, Appellant impliedly consented to the blood draw. *See* 75 Pa.C.S.A. § 1547(a). The Commonwealth further argued that, under 75 Pa.C.S.A. § 3755, Officer Pehlman did not need to obtain a warrant or demonstrate exigent circumstances in order to instruct the hospital staff to perform the blood draw while Appellant received treatment in the hospital for injuries she sustained as a result of the motor vehicle accident. *See* Commonwealth's Response, 12/2/13, at 1-2; 75 Pa.C.S.A. § 3755(a). Rather, the Commonwealth argued, Appellant's consent to the search was

implied under the circumstances. Commonwealth's Response, 12/2/13, at 2; **see also Riedel**, 651 A.2d at 139-140 ("[t]ogether, [sections 1547 and 3755] comprise a statutory scheme that implies the consent of a driver to undergo chemical blood testing under particular circumstances").

Appellant did not respond to the Commonwealth's reply and Appellant did not file an additional supplemental pre-trial motion. Therefore, even though the Commonwealth made Appellant aware that Sections 1547 and 3755 existed – **and that Section 3755 specifically authorized the warrantless blood draw in this case** – Appellant did not amend her pre-trial motion to claim that Section 3755 was either inapplicable to her case or unconstitutional.

On November 18, 2014, the trial court held a hearing on Appellant's suppression motion, where the parties stipulated to the facts contained in Officer Pehlman's Incident Report Form. During this abbreviated hearing, Appellant did not contest the applicability Section 3755 and Appellant did not claim that the statute was unconstitutional. **See** N.T. Suppression Hearing, 1-11. The trial court denied Appellant's motion on December 13, 2014.

Following a bench trial, the trial court found Appellant guilty of DUI, highest rate of alcohol (second offense) under 75 Pa.C.S.A. § 3802(c) and, on June 6, 2014, the trial court sentenced Appellant to serve a term of 90 days to 5 years in prison.

On Monday, July 7, 2014, Appellant filed a timely notice of appeal from her judgment of sentence. The trial court then ordered Appellant to file and

serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant complied and, within her Rule 1925(b) statement, Appellant raised the following issue:

> Whether th[e trial] court erred in denying [Appellant's pre-trial] suppression motion, where the blood drawn from [Appellant] was obtained without a warrant or exigent circumstance[s] in violation of [Appellant's] Fourth Amendment rights and no other blood sample has been shown to be admissible?

Appellant's Rule 1925(b) Statement, 8/11/14, at 1. As was true with Appellant's motion to suppress, Appellant's Rule 1925(b) statement relied entirely upon her claim that **exigent circumstances** were absent in this case and, therefore, that the warrantless blood draw violated her Fourth Amendment right to be free from unreasonable searches and seizures. **See id.** Further, as was true with Appellant's motion to suppress, Appellant's Rule 1925(b) statement **did not claim** that the trial court erred in admitting the blood alcohol test results under either the Commonwealth's implied consent law or the "[r]eports by emergency room personnel" law. In addition, Appellant's Rule 1925(b) statement **did not claim** that either the Commonwealth's implied consent law or the "[r]eports by emergency room personnel" law was unconstitutional. **See id.**

Appellant raises one claim on appeal:

> Whether th[e trial] court erred in denying [Appellant's pre-trial] suppression motion, where the blood drawn from [Appellant] was obtained without a warrant or exigent circumstance[s] in violation of [Appellant's] Fourth

Amendment rights and no other blood sample has been shown to be admissible?

Appellant's Brief at 4 (some internal capitalization omitted).

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047-1048 (Pa. Super. 2012) (*en banc*); ***see also*** Pa.R.Crim.P. 581(H). With respect to an appeal from the denial of a motion to suppress, our Supreme Court has declared:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Eichinger***, 915 A.2d 1122, 1134 (internal citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Gallagher***, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, we note that our scope of review from a suppression

ruling is limited to the evidentiary record that was created at the suppression hearing.[3]  *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

On appeal, Appellant has attempted to raise a number of claims in her brief that were never raised in her suppression motion or in her Rule 1925(b) statement, including claims that:  "75 Pa.C.S.A. § 3755 [(the "[r]eports by emergency room personnel" law)] does not apply in the instant case;" if 75 Pa.C.S.A. § 3755 is applicable, the statute is unconstitutional as applied to her; and, "implied consent does not apply to situations in which the driver is unable to refuse consent."  Appellant's Brief at 17-18, 21, and 22.  These additional claims are waived on appeal, as Appellant did not raise the claims before the trial court or in her Rule 1925(b) statement.  Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"); Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the [Rule 1925(b) s]tatement . . . are waived").  To be sure,

---

[3] On October 30, 2013, our Supreme Court decided *In re L.J.*  In *L.J.*, our Supreme Court held that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing.  *In re L.J.*, 79 A.3d at 1087.  Prior to *L.J.*, this Court routinely held that, when reviewing a suppression court's ruling, our scope of review included "the evidence presented both at the suppression hearing and at trial."  *See Commonwealth v. Charleston*, 16 A.3d 505, 516 (Pa. Super. 2011), *quoting Commonwealth v. Chacko*, 459 A.2d 311, 317 n.5 (Pa. 1983).  *L.J.* thus narrowed our scope of review of suppression court rulings to the evidence presented at the suppression hearing.  In this case, Appellant's suppression hearing occurred after *L.J.* was decided.  Therefore, the procedural rule announced in *L.J.* applies to the case at bar.

Appellant has preserved **one claim** on appeal: that exigent circumstances were absent in her case and, because of the *McNeely* decision, the warrantless blood draw violated her Fourth Amendment right to be free from unreasonable searches and seizures. Appellant's Rule 1925(b) Statement, 8/11/14, at 1; Appellant's Pre-Trial Motion, 9/4/13, at 1-2. We conclude that Appellant's preserved claim does not entitle her to relief.

"The Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures." *Commonwealth v. McAdoo*, 46 A.3d 781, 784 (Pa. Super. 2012). "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." *Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000). As the Pennsylvania Supreme Court has held, "exceptions to the warrant requirement do exist. For example, actual consent, implied consent, search incident to lawful arrest, and exigent circumstances may negate the necessity of obtaining a warrant before conducting a search." *Riedel*, 651 A.2d at 139 (internal footnote omitted).

At the trial court level, Appellant based her claim for relief entirely upon her contention that exigent circumstances did not permit a warrantless search under the rationale elucidated by the United States Supreme Court in *McNeely*. As such, we will begin our analysis with an examination of *McNeely*.

In **McNeely**, a Missouri police officer pulled McNeely's vehicle over and arrested him for DUI. After McNeely refused to provide the officer with a breath-test sample, the officer transported McNeely to a hospital and asked him whether he would consent to a blood test. "Reading from a standard implied consent form, the officer explained to McNeely that under state law refusal to submit voluntarily to the test would lead to the immediate revocation of his driver's license for one year and could be used against him in a future prosecution." **McNeely**, ___ U.S. at ___, 133 S.Ct. at 1556-1557. McNeely refused to consent to the blood test. **Id.** ___ U.S. at ___, 133 S.Ct. at 1557.

Notwithstanding McNeely's explicit refusal to consent to the blood test – and the fact that the officer had not obtained a warrant to search McNeely's person – the officer directed a hospital employee to take McNeely's blood. The employee took the blood sample and later testing revealed that McNeely's blood alcohol content was in excess of the legal limit. **Id.** ___ U.S. at ___, 133 S.Ct. at 1557.

Following McNeely's arrest, McNeely filed a suppression motion and claimed that the results of his blood test must be suppressed because "under the circumstances, taking his blood for chemical testing without first obtaining a search warrant violated his rights under the Fourth Amendment." **Id.** ___ U.S. at ___, 133 S.Ct. at 1557. The trial court agreed with McNeely and ordered the chemical test results suppressed; the Missouri Supreme Court affirmed. Both state courts concluded that, under the totality of the

circumstances, exigent circumstances did not justify the warrantless search of McNeely's person. *Id.* ____ U.S. at ____, 133 S.Ct. at 1557.

The United States Supreme Court granted the State's petition for writ of *certiorari* upon the following issue: "whether the natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." *Id.* ____ U.S. at ____, 133 S.Ct. at 1556. The Supreme Court concluded that the natural metabolization of alcohol in the bloodstream did not present a *per se* exigency and that, "consistent with Fourth Amendment principles, [] exigency in [drunk-driving cases] must be determined case by case based on the totality of the circumstances." *Id.* ____ U.S. at ____, 133 S.Ct. at 1556 and 1558.

The Supreme Court began its analysis by noting that the "compelled physical intrusion beneath McNeely's skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation" constituted a search for Fourth Amendment purposes and that the invasion into McNeely's body "implicate[d McNeely's] most personal and deep-rooted expectations of privacy." *Id.* ____ U.S. at ____, 133 S.Ct. at 1558 (internal quotations and citations omitted). As the Supreme Court explained, under its precedent, "a warrantless search of the person is reasonable only if it falls within a recognized exception" to the warrant requirement. "One well-recognized exception, and the one at issue in [**McNeely**], applie[d]

- 12 -

when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Id.* ___ U.S. at ___, 133 S.Ct. at 1558 (internal quotations and citations omitted). In particular, the Supreme Court explained, it has "recognized that in some circumstances law enforcement officers may conduct a search without a warrant to prevent the imminent destruction of evidence." *Id.* ___ U.S. at ___, 133 S.Ct. at 1559.

The *McNeely* Court noted that, in applying the exigent circumstances exception, Supreme Court precedent requires that a court look "to the totality of the circumstances" and determine whether "there [was a] compelling need for official action and no time to secure a warrant." *Id.* ___ U.S. at ___, 133 S.Ct. at 1559. Nevertheless, before the Supreme Court, the State of Missouri requested that the Court "adopt [a] categorical rule" of exigency in drunk-driving cases. As Missouri argued:

> whenever an officer has probable cause to believe an individual has been driving under the influence of alcohol, exigent circumstances will necessarily exist because [blood alcohol content] evidence is inherently evanescent. As a result, the State claims that so long as the officer has probable cause and the blood test is conducted in a reasonable manner, it is categorically reasonable for law enforcement to obtain the blood sample without a warrant.

*Id.* ___ U.S. at ___, 133 S.Ct. at 1560.

The Supreme Court recognized the fact that, "as a result of the human body's natural metabolic processes, the alcohol level in a person's blood begins to dissipate once the alcohol is fully absorbed and continues to

decline until the alcohol is eliminated." *Id.* ___ U.S. at ___, 133 S.Ct. at 1560. Nevertheless, the *McNeely* Court concluded that it would not depart from its "totality of the circumstances" test in drunk-driving cases and, thus, it would not adopt Missouri's proposed "categorical rule" of exigency in such cases. *Id.* ___ U.S. at ___, 133 S.Ct. at 1560-1561. Although the Supreme Court "d[id] not doubt that some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test," the *McNeely* Court held: "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* ___ U.S. at ___, 133 S.Ct. at 1561.

*McNeely* focused solely upon the exigent circumstances exception to the warrant requirement. Indeed, the Supreme Court noted that McNeely **explicitly refused** to consent to a blood test; therefore, the Supreme Court did not consider the validity or effect of Missouri's "implied consent" statute.[4]

_____

[4] In *McNeely*, a plurality of the Court recognized (with seeming approval) the fact that "all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to [blood alcohol content] testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense." *McNeely*, ___ U.S. at ___, 133 S.Ct. at 1566. The plurality recognized that these implied consent laws "impose significant consequences when a motorist withdraws consent" and are one of the "legal tools" that states use "to enforce their
*(Footnote Continued Next Page)*

Despite this fact, Appellant based her entire claim for relief at the trial court level upon **McNeely**. **See** Appellant's Pre-Trial Motion, 9/4/13, at 1-3. Moreover, on appeal, Appellant again argues that, since there were no exigent circumstances in this case, **McNeely** is "directly on point" with her case and **McNeely** demands that we vacate her judgment of sentence, reverse the trial court's suppression order, and remand for a new trial. Appellant's Brief at 13. We conclude Appellant's specific argument to this Court does not entitle her to relief.

As is relevant to the current case, Pennsylvania has an "implied consent" law that reads:

> **[75 Pa.C.S.A.] § 1547. Chemical testing to determine amount of alcohol or controlled substance**
>
> **(a) General rule.**--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:
>
>> (1) in violation of . . . 3802 (relating to driving under influence of alcohol or controlled substance) . . .; or
>>
>> (2) which was involved in an accident in which the operator or passenger of any vehicle involved or a

_(Footnote Continued)_ _____

drunk-driving laws and to secure [blood alcohol content] evidence without undertaking warrantless nonconsensual blood draws." **Id.** ____ U.S. at ___, 133 S.Ct. at 1566.

pedestrian required treatment at a medical facility or was killed.

**(b) Suspension for refusal.**—

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

(ii) For a period of 18 months if any of the following apply: . . .

. . .

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

(ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

75 Pa.C.S.A. § 1547(a) and (b).

Also relevant to the case at bar is 75 Pa.C.S.A. § 3755, entitled "[r]eports by emergency room personnel."  In pertinent part, this statute reads:

**[75 Pa.C.S.A.] § 3755. Reports by emergency room personnel**

**(a) General rule.--**If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. . . . Test results shall be released upon request of the person tested, his attorney, his physician or governmental officials or agencies.

75 Pa.C.S.A. § 3755(a).

A panel of this Court has previously explained:

together, sections 1547 and 3755 comprise a statutory scheme which, under particular circumstances, not only imply the consent of a driver to undergo chemical or blood tests, but also require hospital personnel to withdraw blood from a person, and release the test results, at the request of a police officer who has probable cause to believe the person was operating a vehicle while under the influence.

***Commonwealth v. Seibert***, 799 A.2d 54, 64 (Pa. Super. 2002) (internal quotations and citations omitted); ***see also Riedel***, 651 A.2d at 139-140 ("[t]ogether, [sections 1547 and 3755] comprise a statutory scheme that implies the consent of a driver to undergo chemical blood testing under particular circumstances").

As both our Supreme Court and this Court have held, Pennsylvania's implied consent law is not a mere subpart of the "exigent circumstances"

exception to the warrant requirement. Rather, our Courts have held that an individual's implied consent in drunk-driving cases satisfies the "**consent**" exception to the warrant requirement – which is an entirely separate exception from the "exigent circumstances" exception. ***Riedel***, 651 A.2d at 139-140 (our Supreme Court held: "[t]ogether, [sections 1547 and 3755] comprise a statutory scheme that **implies the consent** of a driver to undergo chemical blood testing under particular circumstances") (emphasis added); ***Seibert***, 799 A.2d at 64 ("together, sections 1547 and 3755 comprise a statutory scheme which, under particular circumstances, . . . **imply the consent** of a driver to undergo chemical or blood tests") (emphasis added); ***Commonwealth v. Keller***, 823 A.2d 1004, 1010 (Pa. Super. 2003) (interpreting sections 1547 and 3755 and holding that, since the trooper had probable cause to believe the defendant was driving under the influence of alcohol, "[the defendant's] **consent to undergo chemical or blood tests was implied**, and [hospital] personnel were required to withdraw blood from [the defendant] and release the test results") (emphasis added); ***Commonwealth v. Eisenhart***, 611 A.2d 681, 683 (Pa. 1992) ("[b]ecause his **consent is implied until the person actually refuses**, under subsection (a) of Section 1547, his actual consent would be no different from his remaining silent. Thus, under the Implied Consent provision, Section 1547(a), testing is allowed absent an affirmative showing of the subject's refusal to consent to the test at the time that the testing is administered") (emphasis added); ***see also Commonwealth v. Shaw***, 770

A.2d 295, 301-302 (Pa. 2001) (Castille, J. dissenting) (explaining: "[T]he *Riedel* Court simply acknowledged and applied certain bedrock principles of search and seizure jurisprudence: *i.e.*, that searches without a warrant are generally unreasonable, but exceptions to the warrant requirement exist, including actual and implied consent, where warrantless searches have been deemed reasonable. [The Pennsylvania Supreme] Court's construction of Article I, § 8 is identical in this particular instance, *i.e.*, [the Supreme Court] recognize[s] a preference for warrants, while also recognizing the reasonableness of warrantless searches in some circumstances, including consent cases") (internal citations and emphasis omitted); *see also Commonwealth v. McCoy*, 975 A.2d 586, 589 (Pa. 2009) (holding, in a Sixth Amendment "right to counsel" case that, "[b]ased upon the statutory language [contained in section 1547(a)], **it is clear that if an individual chooses to operate a motor vehicle in this Commonwealth, the consent to submit to a chemical test has already been given**") (emphasis added).

Before the trial court, Appellant simply claimed that exigent circumstances were absent in her case and, because of the *McNeely* decision, the warrantless blood draw violated her Fourth Amendment right to be free from unreasonable searches and seizures. Appellant's Pre-Trial Motion, 9/4/13, at 1-2; Appellant's Rule 1925(b) Statement, 8/11/14, at 1. Appellant repeats this claim on appeal. Yet, from the above discussion, it is apparent that Appellant's claim on appeal necessarily and immediately fails,

as Appellant's blood was not withdrawn under the "exigent circumstances" exception – but rather under the "**consent**" exception and **under the specific statutory authority** contained in 75 Pa.C.S.A. § 3755.   Since Appellant has preserved no claim that the Commonwealth's implied consent law or the "[r]eports by emergency room personnel" law are unconstitutional (either facially or as applied) or that, under the totality of the circumstances in this case, her implied consent was not objectively valid, we conclude that Appellant is not entitled to relief in this case.[5]

Lastly, we note that, within Appellant's brief to this Court, Appellant claims our holding today will conflict with our recent opinion in *Commonwealth v. Myers*.  *Commonwealth v. Myers*, 118 A.3d 1122 (Pa. Super. 2015), *appeal granted*, ___ A.3d ___ 2016 WL 413082 (Pa. 2016); *see* Appellant's Brief at 13 and 17-24.  We disagree with Appellant's argument.  *Myers* is easily distinguishable from the case at bar.

In *Myers*:   the police witnessed Mr. Myers in the driver's seat of a vehicle that was parked in the middle of the road, with the engine running; Mr. Myers' vehicle was not involved in a motor vehicle accident; when Mr. Myers exited the vehicle, he was clearly intoxicated and the officer immediately placed him under arrest for suspected DUI; the officer had Mr.

---

[5] In reaching this conclusion, we refuse to address the merits of the claims that *McNeely* renders 75 Pa.C.S.A. § 1547 and/or § 3755 unconstitutional. As those issues were not preserved in this case, these claims must wait for another day.

Myers transferred to a hospital because "the officer was of the opinion that [Mr. Myers] was intoxicated to the point where he needed medical attention;" over one hour later, the hospital gave Mr. Myers drugs, which rendered him unconscious; and, while Mr. Myers was unconscious, the police ordered the hospital to perform a warrantless blood draw. *Myers*, 118 A.3d at 1123-1124 and 1127. The trial court concluded that the warrantless blood draw violated Mr. Myers' right to be free from unreasonable searches and seizures and the trial court thus granted Mr. Myers' motion to suppress the blood alcohol test results; the Commonwealth appealed to this Court. *Id.* at 1124-1125.

At the outset, as we explained in *Myers*, 75 Pa.C.S.A. § 3755 (the "[r]eports by emergency room personnel" law) was "not at issue" in the case. *Id.* at 1129. To be sure, Section 3755 clearly did not apply to the case, as Mr. Myers was not involved in a motor vehicle accident and Mr. Myers did not receive medical treatment "as a result of" any motor vehicle accident. *Id.* at 1129; *see also* 75 Pa.C.S.A. § 3755(a) ("[i]f, **as a result of a motor vehicle accident**, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital . . .") (emphasis added). Further, in *Myers*, Mr. Myers was under arrest at the time the police ordered the hospital to perform the warrantless blood draw. *Myers*, 118 A.3d at 1123-1124. As we explained in *Myers*, since Mr. Myers was under arrest at the time, Mr. Myers possessed an explicit, statutory

right to refuse chemical testing under Section 1547(b) – which the police denied him by waiting until he was rendered unconscious to draw his blood. *See* 75 Pa.C.S.A. § 1547(b) (providing a statutory right to refuse chemical testing to "any person placed under arrest for a violation of [75 Pa.C.S.A. §] 3802" ("[d]riving under the influence of alcohol or controlled substance")); *Myers*, 118 A.3d at 1129-1130.

In the case at bar (and unlike *Myers*), Appellant **was** involved in a motor vehicle accident, which required that she receive "medical treatment in an emergency room of a hospital" – thus triggering 75 Pa.C.S.A. § 3755 – and Appellant **never claimed** that she was under arrest at the time the hospital took her blood – thus Appellant did not have the statutory right to refuse chemical testing under 75 Pa.C.S.A. § 1547(b). *See also Riedel*, 651 A.2d at 142 (in *Riedel*, the Pennsylvania Supreme Court held that individuals who are not under arrest do not have a statutory right to refuse chemical testing; the *Riedel* Court explained: "[a]ppellant's reliance on [*Commonwealth v. Eisenhart*, 611 A.2d 681 (Pa. 1992)] is misplaced. **Appellant was not under arrest at the time the blood test was administered and cannot claim the explicit statutory protection of [75 Pa.C.S.A. §] 1547(b)**. Moreover, we will not engraft an additional provision onto the implied consent law. The decision to distinguish between classes of drivers in the implied consent scheme is within the province of the legislature. **We will not reformulate the law to grant an unconscious driver or driver whose blood was removed for medical purposes the**

**right to refuse to consent to blood testing**") (emphasis added) (some internal citations omitted).

Therefore, and contrary to Appellant's current argument to this Court, ***Myers*** has no application to the case at bar and, since Appellant's only preserved claim on appeal fails, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/20/2016</u>