J-S26018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMAL PAYNE | |
| Appellant | No. 3179 EDA 2014 |

Appeal from the Judgment of Sentence entered June 25, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0004095-2013

BEFORE:  OLSON, STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                     **FILED JULY 21, 2016**

Appellant, Jamal Payne, appeals from the judgment of sentence the Court of Common Pleas of Philadelphia County entered June 25, 2014, following his convictions for third degree murder, conspiracy to commit third degree murder, attempted murder, aggravated assault, conspiracy to commit aggravated assault, carrying firearms without a license, carrying firearms in Philadelphia, and possession of instrument of crime.  On appeal, Appellant raises weight and sufficiency of the evidence claims.  Upon review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The trial court summarized the underlying procedural and factual background in its Pa.R.A.P. 1925(a) opinion, which we adopt here by reference. Trial Court Opinion, 4/30/15, at 1-3.

On appeal, Appellant argues his multiple convictions are against the weight of the evidence and based on insufficient evidence "because the inferences drawn that [] Appellant was the shooter were unreasonable inferences." Appellant's Brief at 6.[1] We disagree.

Appellant's contentions amount to no more than mere allegations of error or abuse of discretion, requiring us to reweigh the evidence, making credibility determinations in his favor, or substituting our judgment for that

_____

[1] The issues for our review are stated as follows:

    I. Whether the adjudication of guilt is against the weight of the evidence and shocking to one's sense of justice where the ballistics evidence demonstrated that there was only one shooter, where the first police [sic] on the scene were only given a description of one shooter, where the Appellant's physical appearance did not match the description of the shooter given by eyewitnesses, where the Appellant was implicated years after the crime by unsubstantiated rumor, where witnesses who gave statements to police were motivated by self-preservation and gave inconsistent statements and were witnesses admitted at trial that they had lied to police.

    II. Whether the Appellant's convictions are based upon insufficient evidence because the inferences drawn that the Appellant was the shooter were unreasonable inferences.

Appellant's Brief at 6.

of the trial court or the jury, all in disregard of our well-established standards of review.[2]  We will not do so.  **See**, **e.g.**, **Commonwealth v. Sanchez**, 36 A.3d 24, 39 (Pa. 2011); **Commonwealth v. DeJesus**, 860 A.2d 102, 107 (Pa. 2004).

To the extent Appellant raises reviewable weight and sufficiency of the evidence claims, upon review of the record, the parties' briefs, and the trial

_____

[2] In reviewing a challenge to the weight of the evidence, we note that

> [t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses.  An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence.  Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003) (citations and quotation marks omitted).

> In reviewing a sufficiency of the evidence claim, we determine
>
> whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt.  We may not weigh the evidence or substitute our judgment for that of the fact-finder.

**Commonwealth v. Stevenson**, 894 A.2d 759, 773 (Pa. Super. 2006) (citations omitted).

court opinion, we conclude the trial court adequately addressed these issues. Trial Court Opinion, 4/30/15, at 3-16. Accordingly, we conclude Appellant's weight and sufficiency of the evidence claims are without merit, and affirm the judgment of sentence. We direct that a copy of the trial court's April 30, 2015 opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/21/2016

## IN THE COURT OF COMM ON PLEAS OF PHILADELPHIA COUNTY
## TRIAL DIVISION – CRIMINAL SECTION

FILED

APR 3 0 2015

Crimir
First

**COMMONWEALTH OF PENNSYLVANIA**    :
    :
**v.**    :    **CP-51-CR-0004095-2013**
    :
**JAMAL PAYNE**    :

CP-51-CR-0004095-2013 Comm v. Payne, Jamal
Opinion

7288251811

**OPINION**

CARPENTER, J.                April 30, 2015

Defendant Jamal Payne ("Payne") was charged with and found guilty of Murder of the Third Degree (F1), Conspiracy to Commit Murder of the Third Degree (F1), Attempted Murder (F1), Aggravated Assault (F1), Conspiracy to Commit Aggravated Assault (F1), Carrying Firearms Without a License ("VUFA § 6106") (F3), Carrying Firearms on Public Property in Philadelphia ("VUFA § 6108") (M1), and Possession of Instrument of Crime ("PIC") (M1) on bill of information CP-51-CR-0004095-2013. These charges arose from a drive-by shooting on August 6, 2009 on the 700 block of South 56th Street in the City of Philadelphia which left Troy Travis dead and Tyree Cummings injured. This court requests that the Superior Court uphold the convictions and affirm the sentence imposed in this matter.

## PROCEDURAL HISTORY

On March 11, 2014, Payne elected to exercise his right to a jury trial and to plead not guilty to the above listed charges. On March 17, 2014, the jury found Payne guilty

of the above listed charges and sentencing was deferred to June 25, 2014. On June 25, 2014, this court sentenced Payne to consecutive terms of imprisonment of 20–40 years for Murder of the Third Degree, 10–20 years for Attempted Murder, and 3.5–7 years for VUFA § 6106. He received no further penalty on the remaining charges. On June 30, 2014, Payne filed a post-sentence motion, which was denied on October 29, 2014.

On November 12, 2014, this court received a Notice of Appeal and on January 7, 2015, upon completion of the notes of testimony, Payne was served an Order directing him to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On January 21, 2015, this court received Payne's 1925(b) response which raised the following issues on appeal:

1. The adjudication of guilt is against the weight of the evidence and shocking to one's sense of justice where the ballistics evidence demonstrated that there was only one shooter, where the first police on the scene were only given a description of one shooter, where the defendant's physical appearance did not match the description of the shooter given by eyewitnesses, where the defendant was implicated years after the crime by unsubstantiated rumor, where witnesses who gave statements to police were motivated by self-preservation and gave inconsistent statements, and where witnesses admitted at trial that they lied to the police.

2. The defendant's convictions are based upon insufficient evidence because the inferences drawn that the defendant was the shooter were unreasonable inferences.

## FACTS

On August 6, 2009, just after midnight, Donte Hack ("Hack") and his friends, Troy Travis ("Travis") and Tyree Cummings ("Cummings"), (collectively, the "Crowd") met up after a basketball game at the Sherwood Recreational Center and gathered outside of a

2

home located at 712 South 56th Street in the City of Philadelphia. Shortly thereafter, the defendant and an unidentified co-conspirator drove down Catharine Street and turned onto South 56th Street. The co-conspirator, who was driving the car, continued southbound toward the Crowd gathered in front of 712 South 56th Street. Hack observed the vehicle slowing down as it neared the Crowd, and saw the defendant leaning out of the passenger side window pointing a gun in the direction of the Crowd. As the co-conspirator slowly drove past 712 South Fifty-Sixth Street, the defendant fired shots from the passenger side window at the Crowd approximately fifteen feet away.

Hack immediately ducked down; when he looked up, Hack observed Travis approximately five feet away with a gunshot wound to the head, and Cummings with a gunshot wound to the hand. The defendant and his co-conspirator "took off." Hack and Cummings began running; they ran approximately two blocks to Hack's home located at 5612 Cedar Avenue. Travis died at the scene and Cummings was taken to the hospital with a gunshot wound to his right hand.

## DISCUSSION

### Sufficiency of the evidence

The standard applied when reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.[1] In applying this test, the Superior Court may not weigh the evidence and substitute its judgment for that of the fact-finder. The facts and

---

[1] *Com. v. Heberling*, 678 A.2d 794, 795 (Pa. Super. 1996) (citing *Com. v. Williams*, 650 A.2d 420 (Pa. 1994)).

3

circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law, no probability of fact may be drawn from the combined circumstance.[2] The Commonwealth may satisfy its burden of proving an element of the crime beyond a reasonable doubt through the use of wholly circumstantial evidence. In applying the test, the whole record must be evaluated and all evidence received must be considered.[3] Additionally, any challenge to the sufficiency of the evidence must specify the element or elements upon which the evidence was insufficient; otherwise the claim is waived.[4]

On appeal, the defendant asserts that his convictions are based upon insufficient evidence. This claim is without merit as the evidence introduced at trial was more than sufficient to support Payne's convictions for Murder of the Third Degree, Conspiracy to Commit Murder of the Third Degree, Attempted Murder, Aggravated Assault, Conspiracy to Commit Aggravated Assault, VUFA § 6106, VUFA § 6108, and PIC.

At trial, the jury heard testimony from Donte Hack, Tyree Cummings, Norman Mapp, numerous police officers and detectives, as well as the medical examiner, Dr. Collins. The testimony of eye-witness Hack established that, during the early morning of August 6, 2009, Hack was with a group of people outside of 712 South 56th Street when he observed the defendant and his co-conspirator driving southbound on South 56th Street. Hack saw the vehicle slow down as it neared 712 South 56th Street and observed the defendant leaning out of the passenger side window with a gun pointed in the direction of the Crowd. Moments later, as the co-conspirator drove past 712 South

---

[2] *Com. v. Cassidy*, 668 A.2d 1143, 1144 (Pa. Super. 1995).
[3] *Com. v. Valette*, 613 A.2d 548, 549 (Pa. 1992).
[4] *Com. v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008).

4

56th Street, Hack saw the defendant shooting at the Crowd. Later that morning, Hack described the shooter and his co-conspirator in a signed statement to detectives. In September 2011, Hack gave a subsequent statement to detectives and identified Payne in a photo array as the "shooter in the car." Hack also identified Payne in a photograph in front of the grand jury on September 20, 2012.[5] Although, at trial, Hack disavowed some of the averments he previously made, the jury was able to evaluate the credibility of Hack's initial statement to detectives, his testimony in front of the grand jury, his testimony at the preliminary hearing, as well as his testimony at trial in making its assessment of the evidence presented.

Eyewitness Cummings' August 7, 2009 statement to detectives corroborated that of Hack with regard to the date, time, and location of the shooting as well Payne's conduct in riding southbound on South 56th Street and shooting at the Crowd outside of 712 South 56th Street from the front passenger window. Further, Cummings' March 1, 2010 statement to detectives corroborated Hack's identification of Payne as the shooter.

During the direct examination of Detective Gaul, the prosecutor introduced the following portion of Cummings' August 7, 2009 statement:

> [DETECTIVE GAUL]: Mr. Cummings, could you please go on in your own words and tell us what happened.
> [MR. CUMMINGS]: Everybody was hanging out by the house at 714 South Fifty-Sixth Street. Everybody hangs in front of that house because nobody lives there. While we were hanging out there, a car came down Fifty-Sixth Street from Catharine Street. The car was heading up Fifty-Sixth Street towards where the rec and the pool is. Then as the car was going by us, a boy was hanging out of the passenger side and he had a gun. He started firing and everyone started scattering. I got hit.[6]

---

[5] Hack did not, however, identify Payne at the March 27, 2013 preliminary hearing.
[6] N.T. 3/13/2015 at 62:5-24.

5

During the direct examination of Detective Verrecchio, the prosecutor introduced the following portion of Cummings' March 1, 2010 statement in which he identified Payne as the shooter:

> **DETECTIVE VERRECCHIO:** Who is this person that shot you and Troy Travis?
> **MR. CUMMINGS:** His name is Mal. He's from Lansdowne.
> **DETECTIVE VERRECCHIO:** Did you know this person's name when you were previously interviewed?
> **MR. CUMMINGS:** I knew who it was but I didn't know his name.
> **DETECTIVE VERRECCHIO:** How long have you known Mal?
> **MR. CUMMINGS:** I've known him since December of 2008.
> **DETECTIVE VERRECCHIO:** What was the reason for the shooting, if you know?
> **MR. CUMMINGS:** I really don't know. We was just out there having fun.
> **DETECTIVE VERRECCHIO:** Did you hear anything about a girl getting dunked in a pool that day?
> **MR. CUMMINGS:** No.
> **DETECTIVE VERRECCHIO:** Detective Gaul is showing you a photo array consisting of eight similar looking males. Do you recognize any of these males?
> **MR. CUMMINGS:** Yes. The one right here, pointing to the picture of the defendant Jamal Payne.
> **DETECTIVE VERRECCHIO:** What did you see this male do?
> **MR. CUMMINGS:** He was the one hanging out the window shooting at us when I got shot and [Travis] was killed.
> **DETECTIVE VERRECCHIO:** Have you spoken to him since this incident?
> **MR. CUMMINGS:** No.
> **DETECTIVE VERRECCHIO:** "Who else saw that it was Mal from Lansdowne that night?"
> **MR. CUMMINGS:** We all knew that night.
> **DETECTIVE VERRECCHIO:** Who was all there when it happened?"
> **MR. CUMMINGS:** Me, Ham, Donte and Spence."
> **DETECTIVE VERRECCHIO:** How do you know that they knew it was Mal from Lansdowne that night?"
> **MR. CUMMINGS:** Because after we all got back we talked and we all saw who it was.[7]
>
> ....
>
> **DETECTIVE VERRECCHIO:** Why didn't you tell us who it was when you were first interviewed?

---

[7] N.T. 3/13/2015 at 98-100.

6

**MR. CUMMINGS**: Because I didn't want to go to court. I don't want to be called a snitch. Snitches get killed in my neighborhood.

....

**DETECTIVE VERRECCHIO**: Do you know which person shot you in your hand?"

**MR. CUMMINGS**: I got hit by the car shooter.[8]

Although, at trial, Cummings disavowed many of the averments made in both statements to detectives, they were properly admitted as evidence at trial through the respective testimony of Detective Gaul and Detective Verrecchio.

The testimony of Detective Gaul further corroborated Cummings' and Hack's identification of Payne as the shooter. At trial, Detective Gaul testified about his August 27, 2009 conversation with Norman Mapp, a former acquaintance of Travis and Cummings, who had knowledge of the incident and of the individuals involved. Gaul testified that, shortly after the shooting, Cummings told Mapp "he knew who shot him"[9] and that it was "Jamal from Lansdowne."[10] Mapp also indicated that "everybody knew as far as who was responsible for it."[11] At trial, Detective Verrecchio substantiated Cummings' reference to the shooter as "Jamal from Lansdowne" by confirming that, at the time of the shooting, Payne resided at 5705 Lansdowne Avenue.

Finally, the collective testimony of Officer Fox, who recovered nine (9) fired cartridge casings scattered from South 56th Street to below Webster Street, and Officer Taggart, who retrieved bullets from inside a home located at 710 South 56th Street, from the front passenger tire of a vehicle parked near 712 South 56th Street, and from the front porch of 712 South 56th Street, further established that shots were fired on South 56th Street. The testimony of Officer Stott confirmed that all nine (9) fired cartridge

---

[8] N.T. 3/13/2015 at 101:7-24.
[9] N.T. 3/13/2015 at 74:23.
[10] N.T. 3/13/2015 at 75:5-6.
[11] N.T. 3/13/2015 at 71:20-21.

7

casings which were scattered on the sidewalk and street from 712 South 56th Street to below Webster Street were fired from the same firearm. Further, Officer Stott's testimony confirmed the actions of Payne shooting from a moving car traveling southbound on South 56th Street. Lastly, Dr. Collins' testimony established that Travis sustained a single gunshot wound to his head, which perforated his brain causing his death.

In consideration of the eye-witness accounts which established that Payne traveled down South 56th Street and began shooting at the Crowd outside of 712 South 56th Street and then fled in a vehicle driven by his co-conspirator, in conjunction with the wounds inflicted on the two victims, the evidence supported the jury's finding that Payne was the shooter. As such, this court, in viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, has determined that the evidence was sufficient to enable the jury to find, beyond a reasonable doubt, that Payne was guilty of Murder of the Third Degree, Conspiracy, Attempted Murder, Aggravated Assault, VUFA § 6106, VUFA § 6108, and PIC.

### Murder of the Third Degree (victim Troy Travis)

To convict a person of Murder of the Third Degree (F1), the Commonwealth must prove beyond a reasonable doubt that he committed an unlawful killing with malice, but without the specific intent to kill, and not in the course of a felonious act.[12] Malice may be found to exist not only in an intentional killing, but also in an unintentional homicide where the perpetrator "consciously disregarded an unjustified and extremely high risk

---

[12] 18 Pa.C.S. § 2502(c); *Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa. Super 2011); *See also; Commonwealth v. Santos*, 876 A.2d 360, 363-64 (2005).

8

that his actions might cause death or serious bodily harm."[13] Additionally, malice may be inferred from the use of a deadly weapon upon a vital part of the victim's body.[14]

Here, the testimony of Hack and Cummings established that Payne leaned out of the passenger side window of a car with a gun pointed in the direction of the Crowd outside of 712 South 56th Street. As the vehicle neared the Crowd, the driver slowed down while Payne shot at the people standing outside; he struck Cummings in his hand and Travis in his head. In doing so, Payne consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury when he fired shots at the Crowd and fatally struck Travis in his head, a vital part of the body. Because malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body, these facts are sufficient to support Payne's conviction for Murder of the Third Degree.

Conspiracy (victims Troy Travis and Tyree Cummings)

To convict a person of conspiracy, the Commonwealth must prove that: (1) he entered into an agreement with another to commit or aid in the commission of a crime; (2) he shared the criminal intent with that other person; and (3) an overt act was committed in furtherance of the conspiracy.[15] The Superior Court has clarified that "an explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities."[16] The Court has further opined that the "overt

---

[13] *Com. v. Young*, 431 A.2d 230, 232 (Pa. 1981) (citing *Com. v. Hare*, 404 A.2d 388, 391 (Pa. 1979)).
[14] *Com. v. Thomas*, 54 A.3d 332, 335-36 (Pa. 2012).
[15] *Com. v. Knox*, 50 A.3d 749, 755 (Pa. Super. 2012).
[16] *Com. v. Knox*, 50 A.3d 749, 755 (Pa. Super. 2012).

9

act need not be committed by the defendant; it need only be committed by a co-conspirator."[17] With regard to murder of the third degree, the Supreme Court of Pennsylvania has set forth that "one does not conspire to commit a denominated offense; one conspires to engage in certain conduct."[18] As such, a conspiracy to commit murder of the third degree is supported when there is a conspiracy to commit the conduct leading to the death of the victim and such conduct is being carried out with the mental state of malice.[19]

Here, the evidence presented at trial demonstrated that Payne armed himself with a gun and sat in the passenger seat of a car driven by his co-conspirator. The co-conspirator drove toward the Crowd outside of 712 South 56th Street, slowing down as they neared the group. Payne then shot at the Crowd approximately fifteen feet away, striking Travis in his head and Cummings in his hand. The co-conspirator then sped off. Payne's actions before and after the shooting were sufficient to support his convictions for Conspiracy.

### Attempted Murder (victim Tyree Cummings)

To convict a person of Attempted Murder (F1), the Commonwealth must prove beyond a reasonable doubt that he, with a specific intent to kill, took a substantial step toward committing a homicide.[20] The Pennsylvania courts have held that a specific intent to kill may be inferred from the circumstances surrounding an unlawful killing,

---

[17] *Id.*
[18] *Com. v. Fisher*, 80 A.3d 1186, 1195 (Pa. 2013).
[19] *Id.*
[20] *Com. v. Robertson*, 874 A.2d 1200, 1207 (Pa. 2005) (citing *Com. v. Hobson*, 604 A.2d 717, 719-20 (Pa. Super. 1992).

10

particularly if the defendant used a deadly weapon to inflict injury to a *vital* part of the victim's body.[21]

Here, Payne leaned out of the passenger side window of a car driven by a co-conspirator and pointed a gun in the direction of the Crowd outside of 712 South 56th Street. As the vehicle neared the Crowd, the co-conspirator slowed down and Payne shot at the Crowd, striking Cummings in his hand and Travis in the head. The circumstances of this shooting – Payne arming himself with a gun, targeting the Crowd outside of 712 South 56th Street, slowing down as they drove closer, and shooting at the Crowd from the passenger side window – support an inference of Payne's specific intent to kill. Accordingly, the facts are sufficient to support the conviction of Attempted Murder (F1).

### Aggravated Assault (victim Tyree Cummings)

To convict a person of Aggravated Assault (F1), the Commonwealth must prove beyond a reasonable doubt that he attempted to cause serious bodily injury to another, that he had the specific intent to cause serious bodily injury, and that he took a substantial step toward perpetrating serious bodily injury on the victim.[22] The courts of this Commonwealth have held that evidence of a defendant's "intent to inflict serious bodily injury" can "be gleaned from the other circumstances surrounding" the defendant's attack on the victim.[23]

---

[21] *Com. v. Robertson*, 874 A.2d 1200, 1207 (Pa. 2005) (citing *Com. v. Geathers*, 847 A.2d 730, 737 (Pa. Super. 2004).
[22] 18 Pa.C.S. 2702(a)(1); *Com. v. Fortune*, 68 A.3d 980, 988 (Pa. Super. 2013).
[23] *Com. v. Burton*, 2 A.3d 598, 602 (Pa. Super. 2010) (citing *Com. v. Alexander*, 383 A.2d 887 (Pa. 1978)).

11

Here, the testimony of Cummings and Hack established that Payne armed himself with a gun and rode toward the Crowd outside of 712 South 56th Street. Payne then fired into the Crowd approximately fifteen feet away and struck Cummings in his hand and Travis in his head. These facts are sufficient support Payne's conviction for Aggravated Assault.

### VUFA § 6106, VUFA § 6108

To convict a person of VUFA § 6106, the Commonwealth must prove beyond a reasonable doubt that he carried a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license.[24] To convict a person of VUFA § 6108, the Commonwealth must prove beyond a reasonable doubt that he carried a firearm at any time upon the public streets or upon any public property in a city of the first class without a license to carry a firearm or without a licensing exemption.[25]

Here, the testimony of Hack and Cummings established that Payne leaned out of the passenger side window of car traveling southbound on South 56th Street with a gun pointed in the direction of the Crowd outside of 712 South 56th Street. Additionally, at trial, the Commonwealth presented a certificate of non-licensure for Payne establishing that he was not licensed to carry a firearm on August 6, 2009.[26] These facts are sufficient to support both VUFA convictions.

---

[24] 18 Pa.C.S. § 6106(a).
[25] 18 Pa.C.S. § 6108.
[26] N.T. 3/13/2014 at 155: 6-17.

12

PIC

To convict a person of PIC, the Commonwealth must prove beyond a reasonable doubt that he possessed an instrument of crime with intent to employ it criminally.[27] The statute defines an "instrument of crime" as (1) anything specially made or specially adapted for criminal use or (2) anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.[28] Here, the testimony of Hack and Cummings established that Payne leaned out of the passenger seat window of a car traveling southbound on South 56th Street and pointed a firearm at the Crowd standing outside of 712 South 56th Street. These facts are sufficient to support the conviction for PIC.


**Weight of the evidence**

The standard of review for a challenge to the weight of evidence is well settled in Pennsylvania. The fact finder is the exclusive judge of the weight of evidence, is free to believe all, part, or none of the evidence presented, and determines the credibility of the witnesses.[29] An appellate court cannot substitute its judgment for that of the fact finder.[30] A verdict will be reversed and a new trial granted only where the verdict is so contrary to the evidence as to "shock one's sense of justice."[31] A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have come to another conclusion.[32] Pennsylvania appellate courts

---

[27] 18 Pa.C.S. § 907(a).
[28] 18 Pa.C.S. § 907(d).
[29] *Com. v. Champney*, 832 A.2d 403, 408 (Pa. 2004).
[30] *Id.*
[31] *Com. v. Passmore*, 857 A.2d 697, 708 (Pa. Super. 2004).
[32] *Thompson v. City of Philadelphia*, 493 A.2d 669, 673 (Pa. 1985).

13

have repeatedly emphasized that "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence."[33] Additionally, a challenge to the weight of the evidence that is too vague to allow the court to identify the issue raised on appeal is deemed to be waived.[34]

On appeal, Payne asserts that the adjudication of guilt is against the weight of the evidence and shocking to one's sense of justice where the ballistics evidence demonstrated that there was only one shooter, where the first police on the scene were only given a description of one shooter, where the defendant's physical appearance did not match the description of the shooter given by eyewitnesses, where the defendant was implicated years after the crime by unsubstantiated rumor, where witnesses who gave statements to police were motivated by self-preservation and gave inconsistent statements, and where witnesses admitted at trial that they lied to the police. This court similarly disagrees with this claim, having found the weight of the evidence to support the jury's verdict.

At trial, the jury heard testimony from two eyewitnesses, Donte Hack and Tyree Cummings, both of whom independently identified Payne as the shooter to law enforcement. Although the trial testimony of Hack and Cummings was not entirely consistent with their previous statements to law enforcement, a mere conflict in the testimony does not warrant the grant of a new trial. Further, the jury heard testimony from Dr. Collins, the firearms examiner, and numerous members of the Philadelphia Police Department which corroborated the eye-witnesses' collective account of the

---

[33] *See Com. v. Forbes*, 867 A.2d 1268, 1273 (Pa. Super. 2005); *See also Com. v. Brown*, 648 A.2d 1177 (Pa. 1994).
[34] *Com. v. Seibert*, 799 A.2d 54, 62 (Pa. Super. 2002).

14

shooting. The jury, as the fact-finder, assessed the credibility of each witness and was free to believe all, part, or none of their testimony at trial when making the relevant factual determinations.

When this court charged the jury prior to deliberations, the jury was given the following instruction:

> Remember, as the sole judges of credibility and fact, you the jurors are responsible to give the testimony of every witness and all the other evidence whatever credibility and weight you think it deserves. Now, if you find that there is a conflict in the testimony, the jury has the duty of deciding which testimony to believe, but you should first try to reconcile -- that is, fit together -- any conflicts in the testimony if you can fairly do so.
>
> Discrepancies and conflicts between the testimony of different witnesses may or may not cause you to disbelieve some or all of their testimony. Remember that two or more persons witnessing an incident may see or hear it happen differently. Also, it is not uncommon for a witness to be innocently mistaken in his or her recollection of how something happened. If you cannot reconcile a conflict in the testimony, it is up to you to decide which testimony, if any, to believe and which to reject as untrue or inaccurate. In making this decision, consider whether the conflict involves a matter of importance or merely some unimportant detail and whether the conflict is brought about by an innocent mistake or by an intentional falsehood. You should also keep in mind the other factors already discussed which go into deciding whether or not to believe a witness. In deciding which of conflicting testimony to believe, you should not necessarily be swayed by the number of witnesses on either side of an issue. You may find that the testimony of a few witnesses, even of just one witness, is more believable than the opposing testimony on a particular issue of a greater number of witnesses. On the other hand, you should also consider the extent to which conflicting testimony is supported by other evidence.[35]

The jury was properly instructed by this court on assessing the testimony and the verdict returned against Payne illustrated that the jury found the eye-witnesses to be at least partially credible. Although this court acknowledged the inconsistencies in the witnesses' testimony, this court cannot isolate eyewitness testimony from the testimony

---

[35] N.T. 3/14/2014 at 16:25;17:2-25;18:2-16

15

provided by five police officers and two detectives, as well as all other material evidence admitted at trial. The determination of whether the jury verdict is against the weight of the evidence requires an assessment of *all* of the evidence presented at trial, so while inconsistencies or bias may exist in certain witness testimony, it does not mandate a finding that the verdict is against the weight of the evidence. Further, the jury verdict, reflecting the jury's assessment of the weight of the evidence, was not so contrary to the evidence presented at trial as to "shock one's sense of justice." Therefore, this court finds no merit in Payne's challenge to the weight of the evidence presented at trial.

## CONCLUSION

For the reasons set forth in this Opinion, the Superior Court should affirm the jury's finding of guilt and the sentence imposed in this matter.

_____
Carpenter, J.

16

**First Judicial District of Pennsylvania**
**Honorable Linda A. Carpenter**
**1418 Criminal Justice Center**
**1301 Filbert Street**
**Philadelphia, PA 19107**


Commonwealth  v. Jamal Payne
CP-51-CR-0004095-2013


Date: April 30, 2015


## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:


Defense Counsel/Party:    Gary Server, Esq.
                          52103 Delaire Landing Road
                          Philadelphia, PA 19114 .

Type of Service:  ( ) Personal    ( X ) First Class Mail    ( ) Other, please specify: _____


District Attorney:    Hugh J. Burns, Jr., Esq.
                      Philadelphia District Attorney's Office
                      Three South Penn Square
                      Philadelphia, PA  19107 – 3499

Type of Service:  ( ) Personal    ( X ) First Class Mail    ( ) Other, please specify: _____


_____
Janet Brinkman